## Carr *versus* Le Fevre.
## Le Fevre *versus* Carr.

27  413
189  272

Where each stockholder in a corporation was individually liable for its debts to the amount of the balance unpaid on his stock, receipts by one who conveyed lands to the corporation necessary and authorized for the enjoyment of its franchises, to stockholders for the amounts unpaid by them on their stock, and which amounts were credited to them on the books of the company, are good payments upon their stock.

They will not be affected by after discovered error in the judgment of the company as to the value of the lands.

Although resolutions be passed by the directors invalidating these payments, but providing that the stockholders unable or neglecting to pay an instalment called in in lieu of such payments, may return their old certificates and receive new ones to the amount of their actual cash payments. Such resolution will not be binding upon the stockholders unless they voluntarily consent.

The presence of a stockholder as a director when the resolutions were passed, authorizes no other inference than that he assented to them as a whole.

If he thus assented, he had a right to avail himself of the provision for those who were unable or neglected to pay the additional instalment.

A bond issued by a corporation payable to bearer, is capable of passing by delivery, and will enable the holder to sue upon it in his own name.

ERROR to the District Court of *Allegheny county.*

This was an action of debt by George Le Fevre against S. Watson Carr, to recover four bonds amounting to $2500, payable to John Thompson or bearer, issued by the Chartiers Coal Company, incorporated by the legislature of Pennsylvania. The special verdict finds the following facts in the case : the capital stock of the company was not to exceed $200,000 in 10,000 shares of $20 each, and by the act of incorporation, it was provided that each stockholder shall be liable in his individual capacity for the debts and performance of all contracts entered into by the company, to the amount of the balance unpaid on the stock of said stockholder, so that the subscribed stock of each stockholder shall be liable for the said debts and contracts. On the 7th February, 1850, the whole of the stock was subscribed, 250 shares being taken by the defendant, who at the time paid $500 on account of his subscription. On the 18th October following, he received the company's certificate for 250 shares. On the 20th August, 1850, the treasurer of the company drew on Carr for $375, the amount of the sixth and last instalment due on his stock.

In their stock ledger on the 9th February, 1850, the company charged themselves with certain coal lands, contracts for harbour, and lands at harbour, assigned and conveyed by one Remington to the company, valued and appraised at $100,000, and receipted for by Remington to the subscribers to the capital stock of the company, among whom was Carr, who had a receipt for $2500.

This sum with his cash payments of $10 upon each share appeared on the books of the company to his credit, balancing the charge for his stock, $5000.

On the 1st October, 1850, the president and directors of the company (Carr being one of the directors, and secretary, and present at the meeting) for the purpose of raising means to meet the existing liabilities of the company contracted in the construction of their road, &c., authorized bonds of the company to be issued to the amount of $60,000, in sums of not less than $100 nor exceeding $1000, bearing interest at the rate of 6 per cent. per annum, redeemable in three years from their respective dates. Of the bonds so issued the four in this suit are part, and being payable to Thompson or bearer, Le Fevre became the holder of them without any transfer in writing from Thompson, who was a stockholder and treasurer of the company.

At a meeting of the directors of the company, Carr being present, the following preamble and resolutions were adopted :—

"Whereas but $10 on each share of the capital stock have been called in or paid by the stockholders, and whereas on the organization of this company a prospective value or estimate was placed upon contracts or lands conveyed to the company by Z. W. Remington, and whereas, contrary to the estimates at the time of the organization of the company, $100,000 cash subscriptions proved insufficient to carry out the plans and purposes contemplated by their charter, therefore

"*Resolved*, That it becomes a duty imperative on this board to require and demand the additional unpaid instalment of $10 per share on each share of stock issued or subscribed, to be paid into the company forthwith.

"*Resolved*, That the bonds of the company heretofore issued will be received in the payment of the said additional instalments.

"*Resolved*, That the stockholders unable or neglecting to pay the said additional instalment on each share, may return their old certificates and receive therefor new certificates for stock to the amount of their actual cash payments.

"*Resolved*, That the secretary furnish the stockholders with a copy of the foregoing resolutions."

After the passage of these resolutions, and before Le Fevre became the holder of the bonds sued on, Carr having paid the $2500 cash, being ten dollars per share, and being unable and having neglected to pay the further sum of $10 per share, tendered to the president of the company his original certificate for 250 shares, and demanded a new certificate of stock to the amount of $2500, his actual cash payment, which new certificate the president refused to give.

Judgment was entered upon the special verdict in favour of de-

[Carr v. Le Fevre.]

fendant. This was the error assigned by Le Fevre, plaintiff in error.

Before the case stated was agreed upon and submitted to the court, Carr, the defendant, demurred to the plaintiff's declaration and made the following points :—

1. There is no privity of contract between the plaintiff and defendant, and the defendant can only be chargeable by force of charter; the proviso affords a security "for the debts and performance of all contracts entered into by the company to the amount of the unpaid stock," and was designed as a general protection to the creditors of the company in case of its insolvency, and not to give an action to any particular creditor for his own exclusive benefit.

2. If an action could be sustained by any particular creditor on his claim, it cannot be done until said claim be established by judgment against the company; for individual stockholders cannot be required to contest the claims against the company, and are not supposed to be provided with the means of defence against them.

3. If the plaintiff be a *bona fide* holder of the bonds or creditor of the company, his remedy is, first to obtain judgment against the company, and then by bill in equity, in his own behalf and behalf of such other creditors as there may be, to enforce the liability.

The court (HAMPTON, P. J.) overruled the demurrer, and entered judgment of *respondeat ouster* thereon. This judgment, and the admission in evidence of the four bonds, the books and charter of the company, were assigned by Carr for error.

*Hamilton*, for Le Fevre, plaintiff in error.—Corporations may make such contracts as are necessary in the prosecution of their business: *Angell & Ames on Corp.* 245: and may issue bonds therefor : McMasters v. Reed, *Sup. Ct. Pa.* (not reported.) The responsibility of Carr is primary : Harper v. McCullough, 2 *Denio* 119 ; Van Riper *ex parte*, 20 *Wend.* 614 ; and is several: *Angell & Ames* 669–670 ; Allen v. Sewall, 2 *Wend.* 327 ; Bank v. Magill, 15 *Conn.* 28 ; Clark v. Terry, 17 *Shep.* 148. The amount of shares subscribed, and not the sum actually paid, is the capital of a corporation: 16 *Conn.* 593. A creditor's bill will lie against a stockholder to compel him to pay over to a judgment-creditor the amount unpaid on his subscription: 17 *Ohio* 187. Corporations cannot increase or diminish their capital stock without license from the legislature: *Angell & Ames* 146 ; Salem Mill-Dam v. Ropes, 6 *Pick.* 23. Plaintiff had no notice of the reduction of stock ; the only evidence of such reduction was the stock ledger of the company.

*Mellon* and *Stanton*, for Carr, defendant in error.—If Thompson was bound as a stockholder and treasurer of the company by the resolutions, Le Fevre stands in no better position : 10 *Barr* 431. The validity of such resolutions seems to be decided in Slee *v.* Bloom, 5 *Johns. Ch.* 356 ; 19 *Johns. Rep.* 156.

For *Carr as plaintiff in error.*—The bonds were specialties, and not negotiable, so as to enable the bearer to sue in his own name : Bierly *v.* Haines, 5 *Whart.* 563 ; Freval *v.* Fitch, *Id.* 325.

*Hamilton*, in reply.—Bonds of this description pass by delivery : Morris Canal Company *v.* Fisher ; Delafield *v.* State of Illinois, 2 *Hill* 159 ; Stoney *v.* Trust Company, 11 *Paige* 635.

The opinion of the court was delivered by

LEWIS, C. J.—This is an action by the holder of several bonds of "The Chartiers Coal Company" against a stockholder in said company, to recover a sum alleged to be due and unpaid on his subscription to the stock. The action is brought under that clause in the charter which declares that " each stockholder shall be liable, in his individual capacity, for the debts and performance of all contracts entered into by said company to the amount of the balance unpaid on the stock of said stockholder, so that the subscribed stock of said company, whether paid in or not, shall be liable for said debts and contracts :" *P. L.* 1850, p. 940. The defendant below alleged that the stock taken by him was paid up in full, and the special verdict finds the facts in the case. We are to decide whether the facts so found amount to a payment or not. It appears from the verdict of the jury that 250 shares were subscribed by the defendant on the 7th February, 1850, the par value of which amounted in the aggregate to $5000. It further appears from the entries in the stock ledger of the company, set forth in the verdict, that " conveyances of coal land in fee, contracts for coal land, contracts for harbour, and lands at harbour, &c., as per conveyances and assignments of Z. W. Remington to the company," were "valued and appraised at, and receipted for, by Z. W. Remington to the original subscribers to the capital stock of the company." The amount credited to S. Watson Carr on this account, for money receipted for by Z. W. Remington, is 2500 dollars. The residue of Mr. Carr's subscription was paid in cash. The jury find that each stockholder paid *in cash* only ten dollars on each share, and was credited on the books with the additional sum of ten dollars per share, " in the lands and contracts aforesaid." There is nothing in the special verdict tending to show that there was any fraud in this transaction. The charter anthorized the company to " purchase land not exceeding 1000 acres," and " to employ its capital in purchasing and holding the lands aforesaid, with the improvements," &c. There was, there-

[Carr *v.* Le Fevre.]

fore, nothing in this arrangement with Remington which exceeded the corporate powers of the company. The corporation, being indebted to Remington for the lands necessary for its business operations, was bound to collect the subscriptions to its stock and to pay the money over to Remington in satisfaction of that debt. A payment by the stockholders directly to Remington, with the assent of the corporation, produced the same result, and was in law a good payment *pro tanto* on their several subscriptions to the stock.

In making their contract with Remington the parties took the precaution to have the lands "valued and appraised." We are bound to presume that this was fairly done. There is nothing in the verdict to repel this presumption. It is true that the preamble to the resolutions of the 11th March, 1852, two years after the payment, states that "on the organization of the company a *prospective* value or estimate was placed on contracts and lands conveyed to the company by Z. W. Remington, and that, contrary to the estimates at the time of the organization of the company, 100,000 dollars in cash subscriptions prove insufficient to carry out the plans and purposes contemplated by this charter." What has Mr. Carr to do with an error in the judgment of the company in regard to the value of their purchase from Remington? If through errors of judgment in carrying on their business, they find themselves unable to "carry out their plans," what is that to him? If they took lands at a "prospective value," never realized, it is nothing more than many individuals and corporations have done before. Such an error in management or in their judgment of the value of a purchase, made without fraud, forms no ground for rescinding the contract. Even if Mr. Carr had been the owner of an interest with Remington in the lands conveyed to the company, the contract could not be rescinded without his consent. But, as we understand the verdict, it does not appear that Mr. Carr had any interest in the lands whatever. We infer from the facts stated in it that he satisfied $2500 of Remington's claim against the corporation, and in consideration of doing so, received a credit for an equal amount on his subscription to the stock. This transaction was neither illegal nor improper. It could not be invalidated by the subsequent discovery that the company had made a bad bargain with Remington. Nothing short of Mr. Carr's voluntary consent could give validity to the resolutions of the 11th March, 1852, invalidating the payment made by him through Remington. No inference can be drawn from his presence when the resolutions were adopted, beyond that of his assent to them as a whole. If he did assent to them as a whole, he had certainly a right to avail himself of the provisions made for those who were "unable or neglected" to pay a second time. The verdict finds that he belonged to that class, and that he tendered his old certi-

[Carr *v.* Le Fevre.]

ficate and offered to receive a new one for one-half the amount according to the resolutions, and that this was refused by the president of the company.

We are of opinion that Mr. Carr's subscription to the stock of the company was paid up in full by cash for one half of it, and the arrangement with Remington for the other half; that the resolutions of 11th March, 1852, invalidating that payment, are binding only on those who consented to them; that the presence of Mr. Carr when the resolutions were adopted, authorizes no other inference than that he assented to them as a whole; and that he has fully complied, or offered to comply, with the terms of the resolution which provided for cases like his own.

This view of the case renders it unnecessary to consider the other points. But we do not desire to have any doubt on the question whether the holder of bonds issued by a corporation, payable to bearer, may maintain an action on them in his own name. Such bonds are not strictly negotiable under the law merchant, as are promissory notes and bills of exchange. They are, however, instruments of a peculiar character, and being expressly designed to be passed from hand to hand, and by common usage actually so transferred, are capable of passing by delivery so as to enable the holder to maintain an action on them in his own name. Possession is *prima facie* evidence of ownership.

The judgment of the court below is correct.

Judgment affirmed.