## Sheaff's Appeal.

1. A navigation company leased part of their property at a specified money rent, and afterwards mortgaged *all* their property, "and also all the tolls, profits and emoluments of the navigation which now are or hereafter may be reserved and made payable to them, upon the sale, lease or conveyance of any part of their estates, rights or privileges, especially" (the lease, describing it), "excepting and reserving only such parts or portions thereof as from time to time by the said company may be deemed necessary to defray the expenses of direction and administration, and to continue, complete, extend and repair their works or any part thereof." All the property of the company was sold under the mortgage. *Held*, that the officers of the company were not entitled to be paid their salaries due, as "expenses of direction," &c., out of the proceeds of sale.

2. The proceeds of sale represented what was pledged, not what was reserved out of the pledge.

3. The money was distributable to the creditors whose liens on the estate were divested; an officer was not such a creditor.

4. If their salaries are part of the "expenses of direction," they are to be paid out of the rents accruing on the lease.

5. "Tolls, profits and emoluments" in the mortgage include rents.

May 21st 1867.    Before WOODWARD, C. J., THOMPSON and AGNEW, JJ.    STRONG and READ, JJ., absent.

Appeal from the decree of the Court of Common Pleas of *Lancaster county*, in the distribution of the proceeds of the sheriff's sale of the estate of the Lancaster and Susquehanna Slackwater Navigation Company.

On the 1st day of January 1847, the company leased to Joseph Pancoast and others a lot at Lock No. 6, containing 5 acres and 64 perches, "with the exclusive right and privilege of using all the surplus water-power not needed at Locks No. 6 and 7," for 20 years, at a rent of $250 for the first year, and increasing until the end of the term, the last four years to be $800 per annum; the lessors to keep the locks in order, and, if not done, the lessees, under conditions specified, to have the right to do so and deduct the cost from the rent; and at any time within the term that the lessees shall pay $10,000, with any arrears of rent then due, the lessors will convey to the lessees "the said lot of land, water-power and privileges," with covenant by the lessors to keep up the works as specified.

The company, on the 20th day of December 1847, executed a mortgage to Isaac Hazlehurst, trustee, to secure the payment of bonds to be issued by them to the amount of $25,000, with interest, the principal to be payable on the 1st of July 1865. The premises mortgaged were described as follows, viz.: "All and singular the lands, tenements, hereditaments, works, water-powers and other property of them, the said the Lancaster and Slackwater Navigation Company, whatsoever and wheresoever situated; and also all tolls, profits and emoluments of the navigation which now

are or hereafter may be reserved and made payable to them upon the sale, lease or conveyance of any part of their estates, rights or privileges, especially a certain lease made and entered into on the 1st day of January 1847 between the company and Joseph Pancoast and others;" " excepting and reserving only such parts or portions thereof as from time to time may be, or by the said company may be deemed, necessary to defray the expenses of direction and administration, and to continue, complete, extend and repair their works or any part thereof; and saving and excepting to the said company the right, with the assent of the said trustee, to sell, lease or otherwise dispose of any part of their real estate, free and clear of all lien or encumbrance from these presents, and saving and excepting also to the said company the right from time to time of making and declaring dividends out of the surplus profits arising out of the business of the company after making provision for the payment of the interest on the said bonds."

Bonds were issued, under this mortgage, to the amount of $19,500, which were all outstanding when the property of the company was sold under it, on the 7th of April 1866.

William A. Atlee, Esq., was appointed auditor to report distribution of the proceeds of sale.

The amount of money in court as proceeds of the sale, after deducting expenses of audit, &c., was $9018. Since the sale, one year's rent—$800 under the lease to Pancoast—had become due, the value of which at the date of sale the auditor reported to be $776.87, "subject to whatever set-off the lessees might have." The company was insolvent at and after the day of sale.

The claimants on the fund before the auditor were the bond-holders and claimants for salaries as officers, &c. John A. Sheaff claimed $322.29, as superintendent for the company up to the day of sale. The auditor reported against his claim. The court confirmed the report, and Sheaff appealed to the Supreme Court, assigning for error this confirmation.

*A. Slaymaker*, for appellant.

*T. E. Franklin*, for appellees, cited Garro *v.* Thompson, 7 Watts 416 ; Bratton's Appeal, 8 Barr 164 ; Crawford *v.* Boyer, 2 Harris 380 ; Morrison *v.* Funk, 11 Id. 421 ; Bradley *v.* O'Donnel, 8 Casey 279 ; Hepburn *v.* Snyder, 3 Barr 72.

The opinion of the court was delivered, November 4th 1867, by

WOODWARD, C. J.—On the 1st day of January 1847, the Lancaster and Susquehanna Slackwater Navigation Company made a lease to Joseph Pancoast, David Reeves and George Wolf for a term of twenty years of a five-acre lot at lock No. 6

of their works in Conestoga township, Lancaster county, together with the water-power furnished by the surplus water of locks No. 6 and 7, the lessees yielding and paying therefor $250 for the first year, $500 a year for the next six years, $600 a year for the next five years, $700 a year for the next four years, and $800 a year for the last four years of the term, in equal half-yearly payments. Among the covenants of the lease was one that bound the lessees at all times to keep the dams and locks at locks 6 and 7 in good order and repair.

On the 20th December 1847 the company, in pursuance of authority which authorized them to borrow money, executed a mortgage to Isaac Hazelhurst, in trust for the holders of bonds to be issued to the amount of $25,000, and described the mortgage premises as follows:—

" All and singular the lands, tenements, hereditaments, works, water-powers, and other property of them, the said Lancaster and Slackwater Navigation Company, whatsoever and wheresoever situated; and also all the tolls, profits and emoluments of the navigation *which now are* or hereafter may be reserved and made payable to them, upon the sale, lease or conveyance of any part of their estates, rights or privileges, especially a certain lease made and entered into on the 1st day of January, A. D. 1847, between the said the Lancaster and Susquehanna Slackwater Navigation Company of the one part, and Joseph Pancoast, David Reeves and George Wolf of the second part, excepting and reserving only such parts or portions thereof as from time to time may be or by the said company may be deemed necessary to defray the expenses of direction and administration, and to continue, complete, extend and repair their works or any part thereof."

Of the loans thus provided for, bonds to the amount of $19,500 were issued, and fell due July 1st 1865, and were all outstanding on 7th April 1866, when Hazelhurst, having obtained judgment on the mortgage, brought the premises to a sheriff's sale which produced a net fund for distribution to the amount of $9018.

The appellant, Sheaff, was superintendent of the company's works, and he claimed out of the fund in court $322.29, as the balance of his regular salary due to him at the day of sale, which claim being disallowed, he has taken this appeal.

His claim is attempted to be supported upon the reservation expressed in the above quotation from the mortgage. His salary as superintendent was one of the " expenses of direction and administration," and therefore should be paid, his counsel argue, out of the fund in court.

When it is considered that the fund in court represents what was granted or pledged by the mortgage, not what was reserved out of it, the utter groundlessness of the appellant's claim at once appears. The purchaser pays so much money as the price of the

mortgaged estate, and that money is distributable among such creditors as have their liens upon the estate divested by the sale. But Sheaff is not such a creditor. He had no lien that was divested by the sale. If his salary was one of the expenses which the company deemed necessary to the direction and administration of the company, he is entitled to be paid out of the rents accruing upon the lease of January 1847, which fund the auditor ascertained to amount at the time of sale to $776.87. This was the fund that was reserved out of the mortgage, or so much of it at least as in the judgment of the company was "necessary to defray the expenses of direction and administration, and to continue, complete, extend and repair their works or any part thereof." That is the fund to which Sheaff and all the officers of the company should look for their salaries. No doubt they will have a contest for it with the purchaser at sheriff's sale, because all of it that was not subject to the reservation passed to him ; but that contest does not belong to this proceeding. Here nothing is in question except the fund raised by the sheriff's sale, and to that it appears to us that Sheaff is a mere stranger.

In this intimation that the officers will be entitled to compensation out of the rents of the company, who, though insolvent, had the right of administration up to the time of the sheriff's sale, so applied the rents, I do not overlook the verbal criticism of counsel, upon which they found their argument, that the reservation applied only to the "tolls, profits and emoluments of the navigation." I agree that these words are the grammatical antecedents of the relative " *thereof*," in the reservation clause ; but what " *tolls, profits and emoluments*" are meant? The instrument itself answers, " all the tolls, profits and emoluments of the navigation which now are or hereafter may be reserved and made payable to them upon the sale, lease or conveyance of any part of their estates, rights or privileges, *especially a certain lease made and entered into the* 1*st day of January*, A. D. 1847, *&c.,*" designating the very lease out of which the rents issue. That the *rents* of that lease may be and must be included in the comprehensive terms of " *tolls, profits and emoluments*," results not only out of the laws of language, but out of the very particular reference which the reservation makes to the lease. For what else but rents could accrue to the company from the lease ? As surely as the reservation is expressed in English, some profits or emoluments of this particular lease were intended to be reserved, and unless they were rents, it is impossible to see what they could be. That they were not *called* rents is immaterial, for if the thing is sufficiently designated, we are not to misunderstand it because it is not called by its most appropriate name. We mistake neither persons nor things on account of misnomers,

if there is enough of inaccurate language to individuate the object intended.

But these considerations do not really belong to the case as presented upon this record. The appellant clearly has no claim upon the fund now in question, and therefore he takes nothing by his appeal.

The decree is affirmed.