[Several cases argued in this district have been elsewhere reported, because of their relation to other cases : Gregory v. Commonwealth, 121 Pa. 611 ; Shoemaker v. Harrisburg, ante p. 285; Berghaus v. Harrisburg and Klugh v. Harrisburg, ante p. 289.]

## COMMONWEALTH v. SUSQ. & DEL. RIVER R. CO.

### ERROR TO THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued May 30, 1887.

Re-argued May 28, 1888—Decided October 1, 1888.

1. The trustee in a mortgage of the franchises and property of a corporation, executed to secure its bonds and the interest thereon, becomes a repository of the title to the corporate franchises and property in trust for all the bondholders secured thereby alike.
2. Upon a default made, the duties of the trustee become active, and, if he neglect or refuse to move, any bondholder may proceed by bill, in behalf of himself and of others of his class, to compel a sale of the franchises and property for the common benefit of all.
3. The bonded indebtedness secured by the mortgage is a unit, so far as the duties and powers of the trustee are concerned, and the remedies to enforce payment of the bonds or accrued interest are confined to

(306)

those provided in the mortgage and afforded by a court of equity upon the bill of the bondholder.

4. A judicial sale, under the act of April 7, 1870, P. L. 58, of the franchises and property of a corporation, made upon a fieri facias from the judgment of an individual bondholder for arrears of interest upon bonds secured by the trust mortgage, will pass no title to the franchises and property covered by the mortgage: Pierce v. Potter, 7 W. 475, distinguished.

5. Wherefore, purchasers at such sale, claiming to have organized a new corporation and to enjoy the franchises and rights of the defendant in the writ, cannot set up title thereto as acquired at such sale, and in proceedings by quo warranto judgment of ouster will be entered in favor of the commonwealth.

Argued before GORDON, TRUNKEY, GREEN and CLARK, JJ.; MERCUR, C. J., PAXSON and STERRETT, JJ., absent; Re-argued before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 6 May Term 1887, Sup. Ct.; court below, No. 243 January Term 1886, C. P.

On January 6, 1886, a writ of quo warranto issued against an association called The Susquehanna & Delaware River Railroad Company, upon a suggestion filed by Mr. Attorney General Lewis C. Cassidy, that certain persons therein named since August 22, 1881, were pretending to act as directors of an association called The Susquehanna & Delaware River Railroad Company, and claimed to possess and enjoy the franchises, corporate rights and privileges of The Pennsylvania & New England Railroad Company, a corporation which had been organized on May 5, 1880, under the general railroad act of April 4, 1868, P. L. 62, with power to construct a railroad from a point near Harrisburg, through the counties of Dauphin, Lebanon, Berks, Lehigh and Northampton, to the New Jersey state line; and averring that the said association and the parties named did not have and never had any corporate rights whatever.

On May 24, 1886, the amended answer of Charles H. Mintzer and others, as president and directors of the Susquehanna & Delaware River R. Co., was filed, wherein it was set forth, in substance:

That The Pennsylvania & New England Railroad Company,

whose lawful existence was by the said suggestion admitted, on June 1, 1880, executed a mortgage upon its franchises and property to secure the payment of 1100 coupon bonds of $1,000 each, payable on June 1, 1910, with interest payable semi-annually on June 1st and December 1st each year, as provided in the coupons attached to said bonds, and that said mortgage was duly recorded in the counties of Lehigh, Northampton, Berks, Lebanon and Dauphin. The following is a provision of the mortgage :

And . . . . . if default be made in the payment of any of said coupons, or instalments of interest as aforesaid, by the said company, for a period of one year, it shall be the duty of said trustees, or the survivor of them, or their successors, upon a written request of holders of bonds upon which interest shall remain unpaid, representing bonds to the amount of three hundred thousand dollars ($300,000) then outstanding, to sell and dispose of said mortgaged premises, with the appurtenances, by public sale . . . . . giving at least three months' notice of said sale, the equity of redemption being hereby waived and released on the part of said company, and full authority to sell as aforesaid being vested in said trustees, and apply the proceeds of said sale to the payment and satisfaction of the principal and interest of said bonds, first deducting costs and expenses of sale, and any sums or amounts due the trustees.

It was averred further that the said company on June 1, 1881, made default in the payment of interest on said bonds, and afterwards, 18 of said bonds with the coupons attached became the property of Frederick Baker, each of the coupons being for the sum of $30. Payment of the coupons having been refused, suit was brought upon them in the Court of Common Pleas No. 2 of Philadelphia county, and on June 25, 1881, judgment obtained against the company for the sum of $542.25, the amount of the coupons with interest ; that thereupon a fieri facias was issued from said court upon said judgment, by virtue of which the sheriff of the county made demand of said corporation at its principal office, and payment being refused, and no personal property pointed out, a special return was made accordingly; that afterwards, an exemplification of the entire judgment and proceedings thereon

was filed in the Court of Common Pleas of Lehigh county, and judgment entered thereon in said county, from which on July 9, 1881, a fieri facias issued directed to the sheriff of Lehigh county, upon which writ levy was made, as directed, " upon the corporate franchises of the said The Pennsylvania & New England Railroad Company, granted May 5, 1880, with all the rights, powers and privileges thereunto belonging, consisting of authority to construct and build, and operate a railroad, commencing in or near Harrisburg, in Dauphin county, and extending northeastwardly through the counties of Lebanon, Berks, Lehigh and Northampton, to a point of connection with the Pennsylvania & New England Railroad at the New Jersey state line, a short distance south of the Delaware Water Gap, about 107 miles in length," etc., etc.; and that said franchises and property on July 18, 1881, were sold to Damon Y. Kilgore for the sum of $600, the sheriff's deed therefor afterwards acknowledged, delivered and duly recorded in the said several counties.

That, afterwards, to wit, on August 15, 1881, the parties interested in said purchase, and for whom and on whose account it was made, assembled and organized a new corporation, to wit, The Susquehanna & Delaware River Railroad Company, and afterwards, to wit, on August 17, 1881, did file a due and legal certificate of said organization, in the office of the secretary of the commonwealth at Harrisburg, and the commonwealth accepted the same and recognized the said corporation : Wherefore, etc.

To the foregoing answer the attorney general demurred, and prayed for judgment of ouster with costs against the defendants.

On September 21, 1887, the court, SIMONTON, P. J., filed the following opinion :

1. The commonwealth contends that the sale by the sheriff of Lehigh county, of the property and franchises of the Pennsylvania and New England Railroad Company to the persons who thereafter organized themselves as the corporation defendant, which sale is the foundation of their title to be a corporation and to exercise the rights and franchises claimed by them in their answer, passed no title to the franchises and rights of

the former corporation, because the first fieri facias on which the return of demand, non payment, and nulla bona was made, having been issued out of and returned to the Court of Common Pleas of Philadelphia county, where the judgment on which it was founded had been obtained, the second fieri facias was not issued out of said court, but was issued out of the Court of Common Pleas of Lehigh county, after an exemplification of the record of said judgment and the proceedings thereon had been filed in said last named court.

We do not think this objection to the title of defendant is valid. The writ of fieri facias given by the act of April 7, 1870, is "in lieu of the provisions in proceedings by sequestration," under the act of June 16, 1836, and in addition to the provisions of section 72 of said act. This section prescribed what must be done to entitle the creditor to the writ of sequestration prior to the passage of the act of April 7, 1870. And the same procedure, since the passage of this act, gives the right to a levy by fieri facias on the franchises. Section 73 of the act of 1836 provides that in every case in which a judgment shall have been obtained against a corporation subject to sequestration, and an execution issued thereon shall have been returned unsatisfied in whole or in part, "it shall be lawful for the court in which such judgment shall have been obtained," to award a writ of sequestration. This return must, no doubt, be based upon the proceedings prescribed by section 72. It was held in Reid v. Railroad Co., 32 Pa. 257, that the writ was properly awarded upon a judgment which had been transferred from the Common Pleas of the county where it had been obtained to the Common Pleas of another county. And the same case decides that "if the record shows that there was a judgment against the corporation, that an execution had been issued thereon, and returned unsatisfied in part or in whole, then the requirements of the statute are satisfied." Since, therefore, everything was done that was necessary in this case to have warranted the awarding of a writ of sequestration by the Common Pleas of Lehigh county, if the act of 1870 had not been passed, the second fieri facias was properly issued out of that court and the sale upon it, unless for some other reason, passed a good title.

2. It is further contended, on behalf of the commonwealth,

that defendants took no title by virtue of the sale under said fieri facias for the reason that no sale could legally be made on any execution based upon the judgment upon which the fieri facias issued.

The argument is this: The act of 1870 provides that the purchaser or purchasers of any property and franchises authorized to be sold by said act, "shall take the same clear of all incumbrance excepting any mortgage or mortgages which may legally exist at the time of levy thereupon, the lien of which shall not be affected in any manner by said sale." The sale in this case was made on a judgment for the amount of overdue coupons. The bonds to which these coupons were attached were secured by a mortgage which was a lien at the date of the levy. The coupons being for interest due upon the mortgage debt, represented part of the debt itself, and therefore a sale upon such judgment would necessarily discharge the lien of the mortgage; the very thing which is forbidden by the act.

This argument is, apparently, of great force, but we do not think it is conclusive. The act does not forbid a sale upon a judgment obtained for part or a whole of the mortgage debt. Suppose a judgment is obtained for the whole amount of the bonds secured by the mortgage, can it be that a fieri facias could not be issued on such a judgment, nor a sale made on it? But if this could be done would not the lien be discharged? If so it would be a case where the lien of a mortgage existing at the time of the levy, was discharged by a sale under the act. The act of April 6, 1830, P. L. 293, provides when the lien of a mortgage is prior—with certain exceptions—to other liens, "the lien of such mortgage shall not be destroyed or in any way affected by any sale made by virtue or authority of any writ of venditioni exponas." Yet it was held in Pierce v. Potter, 7 W. 475 that "notwithstanding the act of April, 1830," a sale on a venditioni exponas based on a judgment for the mortgage debt discharged the mortgage. KENNEDY, J., said: "Though the words of the act are, that 'the lien of such mortgage shall not be destroyed or in any way affected by any sale made by virtue or authority of any writ of venditioni exponas,' yet when the whole section is considered in reference to this case, it is perfectly obvious that it cannot be held to embrace it. Here the writ of venditioni exponas includes the same

debt mentioned in the mortgage, so that, of necessity, the sale by virtue of it could not but affect the lien of the mortgage by reducing, at least, if not wholly discharging the debt, accordingly as the amount bidden at the sale might happen to be less or equal to the amount of the debt. It cannot be supposed that the legislature intended to exceed their power by extending the act to the case of a writ of venditioni exponas, grounded upon a judgment in favor of the mortgagee against the mortgagor for the same debt secured by the mortgage, because either a reduction or an entire payment of the debt by a sale under the writ of venditioni exponas would necessarily destroy, or at least affect, by lessening the amount, the lien of the mortgage. And it was not in the power of the legislature to continue the lien of the mortgage after the payment of the debt, though it was produced by a sale under the writ of venditioni exponas. The case then must be regarded as standing upon the same ground it would have done had the last-mentioned act never been passed."

It will be observed that the same language is used in the act of 1870 as in that of 1830. The lien "shall not be affected in any manner by said sale." And a like reasoning applied to this act would lead to the conclusion that the legislature did not intend it to apply to a case where the writ was issued upon a judgment founded on the mortgage debt, at least to the extent of forbidding entirely a sale upon such a fieri facias which is the only point which concerns us now. This conclusion is strengthened when we note that the act authorizes the issue of a fieri facias by the "plaintiff or assigns, in any judgment against any corporation" to which the act applies. In view of this we cannot see our way clear to adopt the alternative contended for on behalf of the commonwealth, and to hold that from "any judgment" must be excepted all judgments for the whole or any part of the mortgage debt. We incline rather to the construction adopted in Pierce v. Potter. One of the arguments for this is thus stated by BELL, J., in West Branch Bank v. Chester, 11 Pa. 292: "It may be added as of some weight in the argument, that were the certificate holders excluded from this remedy, they would probably be without one for the recovery of interest, as the mere equity of redemption may be valueless. This consequence ought not to be hazarded

in view of the many contracts of this nature, produced within a few years past, by which the payment of interest is as solemnly guaranteed as the discharge of the principal, and without which, it may fairly be concluded, loans could not have been effected."

The case of Paul v. Hassal, recently decided in Lebanon county, was cited on the argument, and it was contended by counsel for the commonwealth that if followed, it must control the case in their favor. We do not so understand it. Apart from the question now before us there was a good reason why that case should be decided as it was, and the decree was certainly right. Another court had jurisdiction of the whole matter, in a form of procedure in which the rights of all parties could be most surely obtained and protected, and we do not even imply a doubt of the soundness of that decision, when we hold, as we do here, that the sale set up in the amended answer, passed a valid title to the property and franchises levied upon. The question whether the lien of the principal of the mortgage was discharged or not, is not before us and we express no opinion on it. The demurrer is overruled.

Judgment was thereupon entered in favor of the defendant, when the commonwealth took this writ, and assigned as error, the overruling of the demurrer, the entry of judgment for the defendant, and the refusal of judgment of ouster in favor of the commonwealth.

The cause was first argued on May 30, 1887. On April 16, 1888, the following order was made:

Per Curiam: It is ordered that this case be re-argued; and attention is requested to the effect of the provision in the mortgage given by the company to secure the payment of its bonds for a sale of the mortgaged premises by the trustees, upon default in the payment of either interest or principal. Is this remedy exclusive?

The cause was again argued, May 28, 1888.

*Mr. Henry Trumbore* and *Mr. Robert Snodgrass* (with them *Mr. W. S. Kirkpatrick, Attorney General,* and *Mr. J. M. Wiestling*), for the plaintiff in error.

When the act of April 6, 1830, P. L. 293, referred to by the

court below, was passed, corporation bonds and mortgages were comparatively unknown. By the rulings of this court in Willard v. Norris, 2 R. 56, and Presbyterian Corporation v. Wallace, 3 R. 109, a sheriff's sale had struck down all mortgages, without regard to their priority or standing. The purpose of that act was to give a certain class of mortgages a protection against this result, but that act and the decisions under it had no application to corporation bonds in the hands of thousands of persons, secured by a mortgage of the corporate franchise, and amounting to millions of dollars.

1. In this case, the controversy turns upon the proviso to the act of April 7, 1870, P. L. 58, which declares that the lien of mortgages shall in no manner be affected by any sale under the provisions of the act. To the holders of the bonds secured by a corporation mortgage, it is of the highest importance that their security should not be easily disturbed, and perhaps above all that no judicial sale on any other instrument than the mortgage itself can affect their lien. The proviso, therefore, by necessary implication restrains the general right to sell given by the earlier language of the act, and forbids bondholders to levy upon and sell the mortgaged property. The right to sue on the bond remains, but the execution can be levied only upon property other than that embraced in the mortgage by which the bond is secured.

2. The powers or remedies prescribed in the mortgage as to a sale of the mortgaged premises, are exclusive, and are binding upon the bondholders; for, otherwise, their agreement or contract would not be a law unto the parties, as contemplated and intended. The lien of the mortgage is an entirety and indivisible, enuring equally to the beneficiaries, so that necessarily bondholders cannot cause the mortgaged property to be sold piece-meal, but only in accordance with the mode prescribed in the mortgage or power creating the debt of the bondholder: P. W. & B. R. Co. v. Woelpper, 64 Pa. 366; Loudenslager v. Imlay, 4 Phila. 382; Pennock v. Coe, 23 How. 117; Fish v. N. Y. Paper Co., 29 N. J. 16; Covey v. P. Ft. W. & Ch. R. Co., 3 Phila. 173. Moreover, in this case, the company not only mortgaged its franchises and all manner of property, but waived and released to the mortgagee the equity of redemption, the only thing that would be affected by a sale under an execution: Pugh v. Mining Co., 112 U. S. 243.

3. Besides, the act of 1870, under which the defendant claims a valid sale was made, is but a supplement to the act of June 16, 1836, P. L. 774, providing a remedy by sequestration. Wherever, therefore, sequestration would not be authorized under the act of 1836, a sale on a fieri facias would not be authorized under the act of 1870. Now, the act of April 22, 1858, P. L. 458, also a supplement to the act of 1836, expressly declares that the provision for sequestration in the latter act shall not apply to any unfinished railroad. Therefore, as the Pennsylvania & New England Railroad was an unfinished railroad, when the pretended sale was made, such sale was void.

*Mr. Francis Jordan* (with him *Mr. F. Carroll Brewster*), for the defendant in error:

1. The phraseology of the proviso to the act of 1870, by all the analogies of the law and judicial decisions upon similar statutes, was intended only to preserve the lien of mortgages other than that on which the sale was made. Any other construction would make the whole proceeding incongruous and absurd. The whole intent and theory of judicial sales is to pass title to the property sold to the purchaser, and for the purchase money to take the place of the property the sale of which was had. If the contrary principle prevailed, the holder of the mortgage, or of the bonds or coupons secured thereby, could sell and re-sell the property as long as he pleased, and the purchaser get no title, and no amount of purchase money realized could ever pay the debt. That such is not the law is clearly shown by the opinion of the court below, sustained by Pierce v. Potter, 7 W. 475; Cronister v. Weise, 8 W. 215; Mendenhall v. West Chester etc. R. Co., 36 Pa. 145 n; West Branch Bank v. Chester, 11 Pa. 282. Interest is a substantive part of the debt: Hummel v. Brown, 24 Pa. 310; Perry's App., 22 Pa. 43.

2. But, the question here is, not whether the lien of the mortgage was extinguished by the sheriff's sale, but whether the purchaser acquired by the sale the corporate rights and franchises of the defendant in the execution. The act of 1870 authorizes the sale; by due process of law the sale was had, and under the act of May 25, 1878, P. L. 145, the defendant company was

organized and procured its charter in due form of law. More-over, it will be observed that the act of 1878 is a copy substan-tially of the act of April 8, 1861, P. L. 259. A purchaser under either act acquired the corporate rights and franchises of the debtor company, with the power to organize a new cor-poration. The act of 1861 was the subject of judicial construc-tion in Commonwealth v. Central Pass. Ry., 52 Pa. 506, and under this authority the charter of the defendant company cannot be taken away upon the present quo warranto.

3. Are all the proceedings leading to the purchase by the defendant null and void, because not had in pursuance of the remedy prescribed in the mortgage? (*a*) The first thing to be noted is the manifest fact that if this be true, then Baker, as the holder of but $18,000 in value of the bonds and the cou-pons thereon, had no remedy at all. The mortgage remedy was available only to holders of bonds on which interest was unpaid, representing bonds to the amount of $300,000. Such a remedy is impracticable and will not be enforced as exclu-sive. (*b*) On the contrary, our fundamental law declares " That all courts shall be open and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law." One cannot by agreement de-·prive himself of free access to the courts, in matters that go to the substance of his cause of action : Wharton on Con-tracts, § 416 ; Mentz v. Insurance Co., 79 Pa. 478 ; Wright v. Insurance Co., 110 Pa. 29. (*c*) " Where by the stipulation of a mortgage, it is a security for the payment of interest as it semi-annually accrues, as well as of the principal, the trustee on the non-payment of either, or, on his failure to act, any bond-holder may, to enforce the security, bring suit, and if it result in a sale of the mortgaged premises as an entirety, which is confirmed by the court, the purchaser takes an absolute title to them as against the parties to the suit or their privies : " Chicago & V. R. Co. v. Fosdich, 106 U. S. 47. (*d*) More-over, that the Court of Common Pleas of Philadelphia had jurisdiction of Baker's action is unquestioned. After judg-ment, the defendant might have taken a writ of error, but it did not. In the present suit of quo warranto the conclusive-ness of the proceeding cannot now be questioned : 1 Herman on Estoppel, § 108 and n. 3 ; Morton v. Weaver, 99 Pa. 47 ;

Wilkinson's App., 65 Pa. 189; Wood v. Bayard, 63 Pa. 320; Yaple v. Titus, 41 Pa. 195.

OPINION, MR. JUSTICE WILLIAMS:

This case involves the title of the defendant company to the franchises, right of way, and other property of the Pensnylvania and New England Railroad Co. The facts on which the controversy arises are as follows: On May 5, 1880, the Pennsylvania and New England Railroad Co. was organized under the general railroad laws of the commonwealth. What became of its capital stock, if it was honestly organized, or in what manner the laws were evaded, if it was not, are subjects upon which the paper-books afford no light; but on June 1st, about as soon as the blanks could be prepared, the company issued coupon bonds, payable in 1910, to the amount of one million one hundred thousand dollars. The interest was payable semi-annually, on the first days of June and December. To secure the payment of these bonds with their interest, the company executed a mortgage to trustees covering their corporate franchises, rights of way and other property, with the usual covenants and stipulations, among which was the following provision: "If default be made in the payment of any of the said coupons or instalments of interest as aforesaid for a period of one year, it shall be the duty of the trustees, or the survivor of them, or their successors, upon the written request of the holders of bonds upon which interest shall remain unpaid, representing bonds to the amount of three hundred thousand dollars ($300,000) then outstanding, to sell and dispose. of said mortgaged premises, . . . . the equity of redemption being hereby waived and released on the part of said company, and full authority to sell as aforesaid being vested in said trustees, and apply the proceeds of said sale to the payment and satisfaction of the principal and interest in said bonds." On June 1, 1881, just one year from their date, the company made default in the payment of the interest on their bonds and have remained in default ever since. Such is the suggestive story of this corporation, save only that it does appear that enough of the funds of the company were devoted to corporate purposes to build one mile and one sixth of a mile out of the 107 miles of the main line projected by it.

The defendant company claims title to the franchises and property of the Penn. & N. E. R. Co., by means of a sheriff's sale founded upon a judgment for unpaid interest on eighteen of the coupon bonds. It appears that on June 3, 1881, after the default in payment of the interest, Frederick Baker became the owner of eighteen bonds for one thousand dollars each, and on the next day brought suit upon the unpaid coupons in the Common Pleas of Philadelphia. After service of the summons upon the company, he obtained judgment by default on the 25th of the same month for $524.25 and costs. A writ of fieri facias was issued on the 27th, and returned, demand made, etc., by the sheriff, on same day. A few days later an exemplified copy of the judgment and subsequent proceedings was filed in Lehigh county, and fieri facias issued thereon by virtue of which the sheriff levied, and on July 18th sold to Kilgore the franchises, rights of way, and property bound by the mortgage, for six hundred dollars. About four weeks later the defendant company was organized and became the holder of the title which Kilgore acquired by the sheriff's sale, and now claims to be legally invested with the franchises originally granted to the Penn. & N. E. R. Co. The position of the defendant is, that the judgment on which the sale to Kilgore was made was obtained for interest upon bonds which were part of the mortgage debt, and that a sale upon such a judgment divested the lien of the mortgage, and vested an unincumbered title to all the property sold, in the sheriff's vendee, under the act of April 7, 1870. The learned judge of the court below adopted this view of the case, and applied the rule in Pierce v. Potter, 7 W. 475 to the sale by the sheriff of Lehigh county, under which the defendant claims. This ruling is the error assigned.

In Pierce v. Potter a bond and mortgage had been taken in the usual form by a creditor. When a default in payment occurred, the creditor, instead of proceeding by scire facias on his mortgage, caused judgment to be entered on the bond and proceeded to levy and sell the land bound by the mortgage by process issued upon the judgment so entered. It was struck down to the plaintiff, the mortgagee, for less than the amount due on the mortgage. The mortgagor notified the plaintiff to enter satisfaction on the mortgage, which he declined to do,

and suit was brought by the mortgagor for such refusal. It was held in that case that while the sale of the land for less than was due might not extinguish the debt, it did extinguish the lien of the mortgage, and the purchaser took all the title the defendant had in the land, free from all incumbrances suffered by him. This rule has been followed in later cases, and is well settled.

If this case comes fairly under its operation, the judgment of the court below must be affirmed. But there is room to distinguish broadly between a mortgage of land in the common form, and a mortgage of the franchises and rights of way of a railroad company, like the one now before us. In the former, the bond and mortgage are payable to the creditor, both are under seal, both pass only by assignment, both are taken as constituting together one security, and the creditor may on default made by his debtor resort to either an action on the bond or a scire facias on the mortgage. In either case, the debtor has actual notice of the proceeding in all its stages, and in either case the land covered by the mortgage must be sold as land. But in the latter form of mortgage the conveyance is not to the creditor, actual or prospective, but to a trustee, who takes title to the franchises etc. for those who may become holders of the bonds secured thereby. Until default is made in the payment of the bonds, or the interest falling due upon them, the trustee has no active duties to perform but is simply the repository of the title to the property mortgaged, in trust for the whole creditor class secured thereby. The actual possession of the franchises and other property remains in the railroad company, to enable it to discharge its duties to the public and earn an income from which to pay its liabilities. But when a default occurs, the duties of the trustee become active and important. He represents all the bondholders, and is under obligation to protect them so far as the property in his hands in trust for them will enable him to do so. If he neglects or refuses to move, any bondholder may proceed by bill filed on behalf of himself and the other members of the class of creditors to which he belongs, to compel a sale of the mortgaged premises, a removal of the trustee, or such other relief as may be appropriate. The bonds are not payable to the mortgagee, but to the bearer; they are not specialties but negotiable instruments, passing from hand to hand

by delivery or indorsement; they find a market in all parts of the civilized world, and are held as an investment in moneyed institutions and by private persons. The mortgagee has no right to the custody of one of the bonds unless he buys it like any other investor, and they furnish him no choice of remedies. He is shut up to the remedies provided by the mortgage and those which the courts of equity may afford him for the purpose of bringing the mortgaged property to sale.

There is also an equally broad distinction between the nature of the property mortgaged by a private person and that mortgaged by a corporation. In the first case, the mortgage is of land as such, which is subject to lien in the county in which it lies and must be sold there, and whether sold upon levari facias on the mortgage or a venditioni exponas upon a judgment entered on the bond, it is wholly immaterial to the debtor and to everybody. The same notice personally or by publication must be given in either case, and the result as to the mortgaged premises is an extinguishment of the lien of the mortgage, no matter which method is adopted. But the corporation under the authority of an act of assembly mortgages its franchises, the gift of the state, its corporate powers and corporate property. These are not land, and the mortgage is a lien upon them only because the making of such a mortgage is expressly authorized by law. By the terms of the mortgage this personal property is conveyed to the mortgagee in trust for sale and conversion into money in a particular manner, and he is charged to apply the proceeds to the payment of bondholders pro rata. He takes the title in trust, and his title cannot be divested except by his own act or the decree of a court of competent jurisdiction. The bonded debt is a unit so far as his duties and powers are concerned. He must regard the bondholders as a class and not as individuals. He cannot permit, and if so wanting in fidelity to his trust as to be willing, the courts will not permit the least discrimination between members of the same creditor class. This is the fair effect of the statutory provisions relating to this subject. Section eight of the act of April 4, 1868, P. L. 62, provides that " The president and directors of any railroad company . . . . shall have power to borrow money not exceeding the amount of the capital stock subscribed, and issue the bonds of the company therefor . . . . to be payable at such

time not exceeding fifty years after the date thereof, and at such place and rate of interest not exceeding seven per cent, as said directors may deem best, and may secure the payment of said bonds and interest by a mortgage on said road and franchises." So the act of March 13, 1873, P. L. 45, declares that it shall be lawful for any railroad corporation "to secure the payment of any and all bonds" issued by it by a mortgage upon the whole or any part of the "property, rights, and franchises" of said company. The mortgage to the trustees is the basis of the loan, and the bonds in the hands of the holder are the evidence of the extent of his interest or share in it.

It has been held to be a presumption of law that all the bonds were issued at the same time which were secured by the same mortgage, and that the fact that they were numbered consecutively gave no priority to any and interfered in no manner with the equality of their holders on distribution. That distribution must be made pro rata is well settled: Perry's Appeal, 22 Pa. 43; Sheaff's Appeal, 55 Pa. 403; Pennock v. Coe, 64 U. S. 117. That the remedy of the bondholders against the property conveyed to the trustee is through him only, is fairly to be inferred from the cases. In New Jersey a bill for foreclosure of the mortgage may be brought by the trustee or by the bondholders against the trustee: Hanckensack Water Co. v. De Keney, 36 N. J. Eq. 548; and Don v. Memphis and Little Rock R. Co., 20 Fed. Rep. 260, holds the same rule, and it is in harmony with the general doctrine relating to the rights and duties of trustees and cestuis que trust. As to other property of the company not conveyed to the trustee, the bondholder may treat himself as an individual creditor, and may proceed to recover judgment for the amount of unpaid coupons or bonds, and to enforce the collection thereof against the defendant: Carr v. Le Fevre, 27 Pa. 413; Phila. and Balt. Central Railroad Co. v. Johnson, 54 Pa. 127. But his execution must be levied on property actually owned by the company and not upon that which has been conveyed to trustees by mortgage or deed of trust duly executed and recorded. He stands when suing at law and proceeding against the railroad company, on the same plane as any other creditor. His writ of fieri facias will reach the same property and in the same way. When, however, it becomes necessary for him to reach the property

held by the trustee, he must proceed against him, not for his own separate benefit but as a bondholder, and on behalf of the bondholders as a class. What may be realized by such proceeding belongs to the whole class and must be distributed among its members pro rata. This is recognized, though not distinctly asserted, in Bradley v. The Chester Valley Railroad Co., 36 Pa. 141, and in Mendenhall v. The Westchester and Phila. R. Co., reported as a note to the case last cited. The case of The Phila., Wil. and Balt. R. Co. v. Woelpper, 64 Pa. 366, is however, an authority substantially in point. Woelpper held bonds amounting to $7,200 secured by a mortgage upon the franchises, liberties, property, etc., " now held or hereafter to be acquired by The Phila. and Balt. Central Railroad Co." The Phila., Wil. and Balt. Railroad Co. held bonds secured by the same mortgage for $122,942.11, and, a default having been made, recovered judgment for the said sum, and levied upon the engines and rolling stock of the company. Woelpper filed his bill against the plaintiff in the writ and the sheriff, asking among other forms of relief, " that it be declared that the property levied upon as aforesaid is a part of the mortgaged premises, and is exempt from levy and sale under the execution on the judgment hereinbefore mentioned, or under any other execution that may hereafter be issued thereon." The master recommended a decree in accordance with the foregoing prayer. The Court of Common Pleas of Chester county made the decree as recommended. The case was brought into this court by appeal and the decree was affirmed and appeal dismissed.

We have been referred to the case of the Chicago and Vincennes Railroad Co. v. Fosdick, 106 U. S. 47, as holding a contrary doctrine; but an examination of that case does not sustain the position of the defendant in error. The sale of the mortgaged property was made by the trustee and the questions were of distribution. We cannot see that the points ruled in that case are adverse to, but regard them rather as in harmony with the conclusions we have reached in this. Our attention has been called also to the act of April 7, 1870, as sustaining the position of the defendant in error, and as vesting in the sheriff's vendee a title to the mortgaged property clear from the incumbrance of the mortgage. We do not so under-

stand the provisions of that act.  It gives a new remedy to creditors who prior to its passage could reach the franchises of a corporation only by process of sequestration under the act of 1836.  In lieu of seizure and sequestration, it authorizes seizure and sale of the rights and franchises of the debtor corporation, and declares that the purchaser shall take the same "clear from all incumbrances except any mortgage or mortgages that may legally exist at the time of levy thereupon, the lien of which shall not be affected in any manner by said sale." If the title to the property and franchises is in the corporation when the seizure is made, the sale passes the defendant's title free from incumbrances, and the holders of liens must look to the fund.  But if the title has been pledged or conveyed to trustees before the seizure, the defendant has only an equity of redemption in the property mortgaged or conveyed, and upon process against the corporation, no greater interest can be seized and sold than the defendant has in the thing seized. The process is not against the trustee.  The trustee's title is therefore unaffected.  In recognition of this principle, the proviso expressly saves the mortgage or mortgages that may legally exist at the time of levy.

We, therefore, conclude as follows :

1. The sheriff's sale to Kilgore passed only such title as the corporation had at the time of the levy in the items of property seized upon the fieri facias.

2. The title held by the trustee, for the purposes expressed in the mortgage, to the rights, franchises and other property covered by the mortgage, is not affected in any manner by said sale.

3. The sheriff's vendee, Kilgore, and the defendants in this case, have no title whatever to the corporate rights and franchises held by the Penn. and N. E. R. Co., and by that company conveyed to the trustee named in the mortgage, by virtue of the sheriff's sale set up in their answer.

4. Judgment should have been entered in favor of the commonwealth on the demurrer.