## Gourley, Substituted Trustee, v. Girard Trust Company et al.

*Bonds—Maturity—Extending date of payment—Consent of majority of bondholders—Terms of mortgage—Duties of trustee.*

1. Where a mortgage provides that the trustee may, after default in payment of principal or interest, and upon request of holders of one-half in amount of the outstanding bonds, sell the mortgaged premises, or institute any suit at law or in equity which it may deem necessary or expedient, a bondholder is bound by the terms of the mortgage and he cannot compel the trustee to foreclose, especially when 90 per cent. in amount of the bondholders oppose a sale and agree to extend the date of payment of the bonds.

2. If there is any difference of opinion among bondholders as to what their interests require, it is not improper that the trustee should be governed by the views of the majority acting in good faith, if what they ask is not inconsistent with the provisions of the trust.

Bill for injunction. C. P. No. 5, Phila. Co., Dec. T., 1926, No. 8215, in Equity.

*H. Gourley*, for plaintiff.

*J. R. Embery* and *Barnes, Biddle & Morris*, for defendants.

MARTIN, P. J., April 12, 1927.—It is ordered and decreed that the bill filed in the above entitled case be dismissed.

Statement of reasons for dismissing bill.

The bill in this case was filed by the substituted trustee for Rebecca M. Vail under the will of Edward J. McGinnis. He holds among the assets of the estate two $1000 bonds of the Huntingdon and Broad Top Mountain Railroad and Coal Company.

The bonds are part of a series of 1500 secured by a mortgage on the railroad and its corporate property and franchises. Bonds to the extent of $1,497,000 were issued, each for the sum of $1000, and became due March 31, 1925. The trustees named in the mortgage died, resigned or were discharged, and the Girard Trust Company was appointed substituted trustee.

Upon maturity of the bonds, the two held by plaintiff were presented for payment to the railroad company. Payment was refused. Suit was instituted and judgment entered for the principal, interest and costs, to be levied out of any property belonging to the railroad company not subject to the lien of the mortgage. Execution was issued, but the sheriff was unable to find property that could be levied upon or attached. The railroad company possesses no property other than that included in the mortgage.

The holders of bonds aggregating $1,179,000 agreed with the railroad company to extend the period for payment of principal until March 31, 1940. Plaintiff, with other bondholders representing $318,000, refused to join in the agreement.

Plaintiff requested the Girard Trust Company to sell the property described in the mortgage by proceeding to foreclose "in the manner provided by the terms thereof, or otherwise according to law or in equity, for recovery of the principal of the bonds held by the plaintiff, with interest." The trust company refused to proceed, as one-half in amount of all bondholders had not demanded in writing that the premises granted with the appurtenances be sold, and refused to institute proceedings at law or in equity, deeming such proceedings not necessary for the benefit of the holders of the bonds.

Plaintiff filed this bill in equity praying for a decree directing the Girard Trust Company to sell the premises described in the mortgage, or to institute proceedings at law or in equity for the recovery of the mortgage debt and for general relief. A copy of the mortgage is attached to the bill.

Gourley, Substituted Trustee, v. Girard Trust Company et al.

The trust company filed an answer, admitting that a request had been made for a sale of the premises under proceedings of foreclosure, but denying that the request was in accordance with the terms of the mortgage, or that the trustee was bound to proceed as requested, and stating that, because of uncertainties in the terms of the mortgage and in the provision that nothing should prevent the trust company from instituting any proceedings at law or in equity under the mortgage which it might deem necessary or expedient for the benefit of the holders of the bonds, the trust company did not deem it for the benefit of the holders of the bonds to exercise this discretion, and notified counsel for plaintiff that, while desirous to fulfill its duties, being in doubt with respect thereto, it would join in proceedings to present the facts to the court and submit to such orders as the court might make. It is averred in the answer that the trust company was notified in writing by a committee of bondholders representing the reorganization plan that it would be detrimental to the best interests of bondholders as a class if the trust company should take proceedings to foreclose any of the mortgages of the company that secure the several issues of bonds; and that the trust company was notified in writing by the president of the Huntingdon and Broad Top Mountain Railroad and Coal Company that over 90 per cent. of the bondholders assented to the plan of reorganization and extended the maturity of their bonds, and that all holders of unfunded indebtedness of the company had acquiesced in the plan; and that the officers of the railroad and coal company believed any action on the part of the trustee under the mortgage would be detrimental to the best interests of the bondholders as well as the other parties interested in the railroad; and that there had been no request made by one-half in amount of the outstanding bonds that the trustee should proceed to foreclose the mortgage as required by its terms; and the trustee did not deem itself justified in proceeding to foreclose the mortgage, as requested by plaintiff.

The answer of the Huntingdon and Broad Top Mountain Railroad and Coal Company avers that the mortgage securing the bonds held by complainant was a third mortgage subject to first and second mortgages; that the outstanding bonds under the first mortgage amount to $416,000, those outstanding under the second mortgage to $367,500, and under the third mortgage to $1,497,000; that, in anticipation of the bonds secured by the third mortgage maturing in the early part of 1925, the directors of the railroad company adopted the plan of refinancing, whereby the maturity of all bonds should be extended and be made payable any time prior to April 1, 1940, which was a temporary arrangement until the board of directors deemed it opportune to create a new mortgage sufficient in amount to refund all the bonds and unfunded outstanding indebtedness of about $1,000,000 incurred for improvements of the road and equipment after the release from Federal control; that the holders of the unfunded indebtedness acquiesced in the plan, and upwards of 90 per cent. of holders of outstanding bonds agreed to extend the maturity of their bonds in accordance with the plan of refinancing and had affixed to their bonds additional interest coupons, payable semi-annually; that, of the bondholders who extended the maturity of their bonds in accordance with the plan of refinancing, there were first mortgage bonds to the extent of $416,000, second mortgage bonds of the value of $346,500, and third mortgage bonds aggregating $1,353,000, making a total of $2,115,500; that complainant could at any time participate in the plan by consenting to an extension of the maturity of his bonds and have attached thereto interest coupons which will be paid semi-annually; that the railroad has assets in excess of all liabilities, and never defaulted in payment of interest coupons during the period of its

existence, extending over seventy years; that it has cash and assets sufficient to meet its current liabilities as they occur; and that the plan of refinancing is for the benefit of bondholders under each of the mortgages.

The allegation in the bill of complaint that holders of bonds in the amount of $318,000 secured by the third mortgage refused to extend the maturity of their bonds is denied in the answer of the railroad company, and it is averred that the total amount of bonds secured by the third mortgage, the maturity of which has not been extended, is $144,000, and that many of the holders of those bonds have not refused to extend the maturity of their bonds, but simply failed to extend them. It is further averred that the reason defendant failed to pay the interest on the bonds held by plaintiff is because he refused to have attached to his bonds interest coupons which could be presented in due course for payment, and that he can have these interest coupons attached at any time he acquiesces in the plan for refinancing adopted by the board of directors of the railroad. It is denied in the answer that complainant is illegally deprived of the benefits of the mortgage given as security for the bonded indebtedness, and averred that he can at any time sell the bonds at their current market value, and have attached interest coupons covering the after periods, as well as the period from April 1, 1925.

It is further averred that complainant as a bondholder is a member of a class, and that a majority in interest have a right, under the terms of the mortgage, to determine what, if any, action shall be taken by the trustee under the mortgage; and that the trustee, in determining what action should be taken by it, is bound to act for the good of the bondholders as a class; that complainant is not illegally deprived of any rights as a bondholder, but is unwilling to act with a large majority of bondholders whose action is in accordance with the terms of the mortgage.

The railroad company requests that the trustee should not be directed to foreclose the mortgage or take any proceeding at law or in equity, because to do so will be detrimental to the best interests of the bondholders as a class, and a large majority of holders of the bonds having agreed to the plan for refinancing adopted by the board of directors of the railroad company, this defendant believes any proceeding at law or in equity taken by the trustee would be detrimental to the best interests of the bondholders as a class.

The mortgage provides that the trustee may take possession of the mortgaged property and carry on the railroad for the benefit of the bondholders after six months' default in payment of principal or interest, upon request of holders of one-half in amount of the outstanding bonds, or, upon the same conditions, the trustee may sell the mortgaged premises for the benefit of the bondholders, and nothing contained in the mortgage is to prevent the trustee from instituting any proceeding at law or in equity which it may deem necessary or expedient for the benefit of the holders of the bonds. There is also a provision that if, in case of a failure to pay the principal and interest of the bonds, one-half in amount of all the lien holders under the mortgage demand in writing that the mortgaged premises be sold, it shall be lawful for the trustee to proceed to sell the premises at public auction.

A request has not been made by one-half in amount of the outstanding bonds that the trust company foreclose the mortgage, and the trust company does not deem itself justified in proceeding to foreclose upon the request of plaintiff, who is relegated to the remedies provided by the mortgage: Com. v. Susquehanna and Delaware R. R. Co., 122 Pa. 306. It is said in this case (page 320) as to the duty of the trustee: "He takes the title in trust. . . . The bonded debt is a unit so far as his duties and powers are concerned.

Gourley, Substituted Trustee, v. Girard Trust Company et al.

He must regard the bondholders as a class, and not as individuals. He cannot permit, and if so wanting in fidelity to his trust as to be willing, the courts will not permit, the least discrimination between members of the same creditor class."

When a mortgage creates a trust and provides that the power of sale is to be executed by the trustee under certain contingencies, the rule for the guidance of the trustee is derived from the instrument: Bradley v. Chester Valley R. R. Co. et al., 36 Pa. 141. It was said in that case that: "The parties have made their contract in their own way, have anticipated the very contingency which has happened, and have provided for it by a remedy which was deemed adequate and fair. Now it is our appropriate duty to hold them to their bargain, but it is not our duty, nor have we power, to interpolate a new condition, and to say what they did not say, that a sale shall take place because interest is not paid."

The terms of the mortgage do not compel the trustee, under the circumstances disclosed by the bill and answers, to sell the premises described in the mortgage, or to institute proceedings at law or in equity for recovery of the mortgage debt, as prayed for in the bill of complaint, when 90 per cent. of the bondholders oppose the sale and have extended their bonds until April 1, 1940, in accordance with the plan of refinancing adopted by the board of directors of the railroad company.

"The trustee represents the mortgage and in executing his trust may exercise his own discretion within the scope of his powers. If there is any difference of opinion among the bondholders as to what their interests require, it is not improper that he should be governed by the views of the majority acting in good faith and without coercion, if what they ask is not inconsistent with the provisions of his trust:" Shaw v. Railroad Co., 100 U. S. 605.