## Schmitt v. Wyoming Valley Public Service Co.

318

*Victor R. Bieber*, for plaintiff.
*S. W. Rhoads* and *Highley & Semans*, for defendant.

ROSEN, J., September 8, 1938.—This case came on to be heard upon the pleadings and an agreed statement of facts. The facts in the agreed statement of facts filed herewith are adopted as the findings of fact in this case.

Defendant company was formed in 1929 by merger of various railway companies. It is the owner of a trolley system located in and around Wilkes-Barre, Pa. It has outstanding common stock of the par value of $5,000,000 and cumulative preferred stock of the par value of $265,-450.

On April 1, 1931, defendant created a six percent bond issue due April 1, 1971, secured by a mortgage on its railway system. The Miners Bank of Wilkes-Barre is trustee named in and acting under this mortgage. Plaintiff is the owner of three $1,000 bonds of this issue.

Defendant's railway lines are operated by The Wilkes-Barre Railway Company, a Pennsylvania corporation (hereinafter called the "operating company"), under leases made by defendant's predecessors with the operating company in 1910, 1911, and 1913, of various parts of the system. These leases demised defendant's entire railway system and all of defendant's property to the operating company. These leases having been created prior to the bond issue, the mortgage securing the latter contained an assignment of these leases to the trustee.

The obligations of the lessee under these leases, by agreement with defendant, were revised downward from time to time because of business conditions, so that dur-

ing the year 1937 the operating company's obligations under the terms of the leases as revised were: (*a*) To pay six percent interest on all the outstanding bonds; (*b*) six percent per annum on the preferred stock; (*c*) a cash rental to defendant company of $32,000 per annum; and (*d*) $4,000 per annum to defendant company to defray corporate maintenance expenses. The lessee had other obligations under the leases relating to taxes, repairs, maintenance, etc., but these are not material to the issue in this case.

Defendant distributed the rental of $32,000 to its common stockholders as and when received by it from the lessee. During the year 1937, defendant's common stockholders were paid the said sum of $32,000, its preferred stockholders received from the lessee the sum of $15,927, being six percent on the outstanding preferred stock, and the lessee also paid the coupons attached to the bonds due April 1, 1937.

In September of 1937, the operating company notified defendant that it could not meet the foregoing payments and offered to surrender the leases or continue in possession if interest on the bonds due October 1, 1937, and thereafter for a period of five years were reduced to three percent per annum, and payments to preferred stockholders were likewise reduced to three percent per annum; the annual rental of $32,000 to defendant and the $4,000 annual payment for corporate maintenance expenses to remain the same. Defendant submitted this plan to its bondholders and preferred stockholders to become effective so far as bondholders were concerned upon approval of 75 percent in amount of outstanding bonds. To date the holders of a total of 96.17 percent in amount of the outstanding bonds and 92.97 percent in amount of the outstanding preferred stock have agreed to the plan which was put into effect, and the assenting bondholders were paid interest at the reduced rate on the coupons due October 1, 1937.

Plaintiff as owner of three $1,000 bonds refused to assent to the reduction of interest and demanded payment of interest at the rate of six percent for the coupons due October 1, 1937. Payment being refused, she instituted suit for this interest in this court as of December term, 1937, no. 314, and obtained a judgment against defendant in the sum of $91.34. Plaintiff also demanded that defendant pay her the sum of $15 on account of each interest coupon due on October 1, 1937, and held by her, but defendant refused to do so unless plaintiff agreed to the reduction of interest and would accept $15 in full for each interest coupon. Thereupon plaintiff filed this bill for an injunction to restrain defendant from paying interest to some and not to all of the bondholders, and further to restrain defendant from paying dividends on its stock until interest to bondholders is paid in full.

Plaintiff, by this bill, is not seeking to enforce any rights under the mortgage securing the bond issue. Indeed, she cannot do so, for not only do the terms of the mortgage place in the hands of the trustee the right to act in case of a default in the payment of interest, but the mortgage specifically provides in section 18 of article VI that no holder of any bond shall have the right to maintain any bill to enforce any right under the mortgage except after notice and request to the trustee to enforce such right by 20 percent of the outstanding bonds and a tender of indemnity. Plaintiff has not complied with this condition.

Plaintiff, by this bill, is seeking to enforce her rights as a creditor of defendant. The substantive right of every creditor "is to have his debt paid in due course. His adjective right is, ordinarily, at law. He has no right whatsoever in equity until he has exhausted his legal remedy. After execution upon a judgment recovered at law has been returned unsatisfied he may proceed in equity by a creditor's bill. . . . He may, by such a bill, remove any obstacle to satisfying his execution at law; or may reach assets equitable in their nature; or he may provisionally

protect his debtor's property from misappropriation or waste, by means of an injunction or a receiver": The Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 497.

The rule that a creditor must exhaust his legal remedies before equity will aid him was early established and uniformly followed in this State: Girard National Bank's Appeal, 13 W. N. C. 101; The People's National Bank v. Kern et al., 193 Pa. 59; Suplee v. Callaghan, 200 Pa. 146; Hyde v. Baker, 212 Pa. 224; McDougall et al. v. Huntingdon & Broad Top Mountain Railroad & Coal Co., 294 Pa. 108, 125.

Plaintiff has neither alleged nor proved that defendant is insolvent. Bondholders who have accepted a reduction in interest have been paid and will be paid their interest by the operating company, lessee. At most, defendant might be called upon to pay the full six percent interest annually to the 3.83 percent non-assenting bondholders. This interest does not exceed $8,500 per annum and the rental of $32,000 per year, which defendant is receiving from the operating company, lessee, is more than sufficient to pay this obligation.

The mortgage securing the bond issue in this case conveyed to the trustee all the property of defendant which it then owned, or might thereafter acquire, together with "all the rents, issues, profits, tolls, revenues, earnings and other income of such lands and every part thereof." However, the mortgagee suffered the mortgagor to remain in possession of the mortgaged property after the execution of the mortgage, and permitted the latter to collect the rents, issues, and profits therefrom. The mortgagor has the right to collect tolls, rents, issues, and profits as its own. See Bulger v. Wilderman & Pleet, 101 Pa. Superior Ct. 168. Indeed, even after the mortgagee takes possession under such a clause in the contract, he only collects the rental as trustee for the owner, being bound to account to the owner for the same: Fidelity Title & Trust Co. v. Garrett, 327 Pa. 305. But the mortgage does not leave the right of the mortgagor to the rentals

until default at all in doubt, for it specifically provides in article XI of the mortgage that until default "the Company, its successors, lessees and assigns, shall be suffered and permitted to retain actual possession of all the property subject to this Indenture other than bonds, cash, securities and other similar property in the sinking fund and to manage, operate and use the same and every part thereof, with the rights and franchises appertaining thereto, and to collect, receive, take, use and enjoy the earnings, income, rents, issues and profits thereof." It is, therefore, patent that there were reserved out of the property pledged to the mortgagee the rents, issues, and profits thereof to the mortgagor until default, and, until such a default is declared by the trustee of the mortgage and possession taken by it of the mortgaged property, defendant is entitled to such rents, issues, and profits as its own property.

Plaintiff having obtained a judgment for the amount of interest due and unpaid, she may by the simple expedient of an attachment execution against the operating company, as garnishee, obtain payment of her judgment. Such an attachment will make available for the payment of her judgment not only all rentals due and payable at the time the attachment issues, but also all future rentals reserved in the lease between the operating company and defendant. Plaintiff has not attempted to execute her judgment. She has an adequate remedy at law which she has not exhausted, and cannot, therefore, maintain this bill.

Counsel for both parties in their briefs contend that plaintiff cannot reach these rentals because a bondholder has no right to issue execution against the mortgaged property so long as other bonds remain unpaid and entitled to the benefit of the security: Commonwealth v. Susquehanna & Delaware River R. R. Co., 122 Pa. 306, 321, 322; Western Pennsylvania Hospital v. The Mercantile Library Hall Co. et al., 189 Pa. 269; Frey v. United Traction Company of Pittsburgh, 320 Pa. 196;

Putnam v. Pittsburgh Rys. Co., 330 Pa. 210, 213. This rule has no application to property of defendant which has not been pledged as security for the bond issue. In Western Pennsylvania Hospital v. The Mercantile Library Hall Co. et al., supra, the Supreme Court quoted with approval from Commonwealth v. Susquehanna & Delaware River R. R. Co., supra, as follows:

" 'That the remedy of the bondholders against the property conveyed to the trustee is through him only, is fairly to be inferred from the cases, . . . As to other property of the company not conveyed to the trustee the bondholder may treat himself as an individual creditor, and may proceed to recover judgment for the amount of unpaid coupons or bonds and to enforce the collection thereof against the defendant: Carr v. LeFevre, 27 Pa. 413; Phil. & Balt. Central R. R. Co. v. Johnson, 54 Pa. 127. But his execution must be levied on property actually owned by the company, and not upon that which has been conveyed to trustees by mortgage or deed of trust duly executed and recorded. He stands when suing at law and proceeding against the railroad company on the same plane as any other creditor. His writ of fieri facias will reach the same property and in the same way. When, however, it becomes necessary for him to reach property held by the trustee, he must proceed against him, not for his own separate benefit, but as a bondholder, and on behalf of the bondholders as a class.' "

Peculiarly applicable to the facts of this case is the statement of the Supreme Court in the case of The People's National Bank v. Kern et al., supra, at page 66:

"Considered as a creditor's bill it cannot be sustained. The plaintiff has a full and adequate remedy at law under the ordinary and long established methods of procedure. . . . The attachment execution which it caused to be issued makes the garnishees, who are defendants in the bill, liable to account for all the property of the defendants in the judgment which is in their hands, and for debts due them. The act of 1836 provides a method by which

their rights may be further and more fully secured. The decision in Girard National Bank's Appeal, 13 W. N. C. 101, cited in the opinion of the learned judge of the common pleas, is conclusive of this question. Fowler's Appeal, 87 Pa. 449, Houseman v. Grossman, 177 Pa. 453, and People's Nat. Bank of Pitts. v. Loeffert, 184 Pa. 164, are cases in which the ordinary remedy at law would have been ineffectual, and they do not affect the established rule."

Nor is the rental of $32,000 exempt from attachment because of the rule "that property of public corporations cannot be taken in execution, so as to interfere with the carrying out of duties imposed (Foster & Co. v. Fowler & Co., 60 Pa. 27; Guest v. Merion Water Co., 142 Pa. 610; Vulcanite Paving Co. v. P. R. T. Co., 220 Pa. 603; McNulty Bros. Co. v. P. R. R. Co., 272 Pa. 442; Bachrach v. R. R. Co., 286 Pa. 325), differing in this respect from the strictly private corporation: McLeod v. Central Normal School, 152 Pa. 575": Mount Union Borough v. Kunz et al., 290 Pa. 356, 363.

Defendant in this case does not operate the railway system in question. It is the lessor and owner thereof and out of possession. The attachment of the rental received by defendant cannot in any manner interfere with the carrying out of the duties imposed upon the operating company in the operation of the road in question. This rental is not part of the railway system, nor can it be said to be income from the railway system, which would be true if it were income of the operating company. In the hands of defendant, lessor of the railway system, this rental is no more income from the road than if the operating company had leased a piece of land for its right of way from an individual and paid a rental of $32,000 per annum for it. It could hardly be contended that such rental would not be subject to attachment by creditors of the landlord.

The case of McDougall et al. v. Huntingdon & Broad Top Mountain Railroad & Coal Co., supra, relied on by

plaintiff, differs from the case at bar. In that case all of defendant's property and its future income were covered by the mortgage in question, and defendant company was operating its own road. Its income therefrom and all other property which it had could not be taken in execution, because to do so would interfere with the carrying on of its duties as a public service company: Bachrach v. Huntingdon & Broad Top Mountain Railroad & Coal Co., 286 Pa. 325. The bondholders whose interest was not paid had reduced their overdue obligations to judgment, but this judgment was limited by the court to property not encumbered by mortgage liens. The sheriff could not find any such property. In other words, execution had been issued upon the judgment and returned unsatisfied. In addition, the Supreme Court in that case pointed out that the defendant company was insolvent. Plaintiffs in that case therefore had no remedy or means of collecting their claims. Defendant in that case by paying interest to some of the bondholders and not to plaintiffs placed them in a position of being discriminated against, because the insolvency of the company jeopardized the possibility of plaintiffs collecting their interest in the future. The only remedy plaintiffs could obtain was that granted to them by the court, to wit, an injunction to restrain the practice of paying interest to some and not to all.

We have not discussed the question as to whether the other obligations of the operating company contained in the leases between them are subject to attachment. It is not necessary to a decision of this case because, as pointed out, the rental which defendant receives annually is sufficient to care for the outstanding unpaid obligations of defendant company. In view of the conclusions we have reached, we also deem it unnecessary to express any opinion on the question of the legality of the action of defendant company in distributing this rental as dividends to its common stockholders without providing for payment of the unpaid interest on the bond issue.

Without discussing them in detail, and for the reasons outlined herein, plaintiff's requests for conclusions of law are refused. It is not necessary to a decision of this case to decide whether payments made by the operating company covering interest on bonds and disbursements to stockholders of defendant are rentals under the lease, or whether the operating company in making such payments is acting as agent for defendant. Similarly, it is not necessary to decide the question as to whether defendant may declare dividends on its capital stock without first providing for the payment of unpaid interest on the bond issue. That the agreement of the majority of the bondholders to accept the reduced rate of interest for a five-year period is not binding upon plaintiff is not involved in this case, this issue having already been determined in favor of plaintiff in the suit which it instituted and the judgment it obtained for the unpaid interest. We cannot declare that defendant is in default on its mortgage bonds because the right so to do is by the terms of the mortgage vested in the trustee, as we have pointed out above. Since we have concluded that plaintiff has an adequate remedy at law which she has not exhausted, her requests for an injunction must be denied.

For the reasons herein stated, defendant's request that an injunction should be refused and the bill dismissed is affirmed. We shall, therefore, enter the following:

### Decree nisi

And now, to wit, September 8, 1938, upon consideration of the above case, it is ordered, adjudged, and decreed that:

1. Plaintiff's bill should be dismissed.
2. Each of the parties to pay their own costs.

The prothonotary will notify the parties or their counsel of the entry of this decree, and, if no exceptions are filed within 10 days thereafter, a final decree will be entered.