## The Philadelphia, Wilmington and Baltimore Railroad Co. *versus* Woelpper.

1. A railroad company under authority of law, mortgaged "all their road, *property*, rights, liberties, privileges, corporate franchises, income, tolls and receipts then held or thereafter to be acquired" "in trust for the use, benefit and security of the holders" of certain bonds therein described. *Held*, that the mortgage was a lien upon engines, rolling-stock, &c., in actual use by the company and required for the transaction of its business, whether owned at the date of the mortgage or afterwards acquired.

2. The maxim, *Qui non habet, ille non dat,* applied.

3. One may grant the future accretions of any subject he owns at the time of the grant.

4. A mortgage will pass all structures or fixtures that may afterwards be erected on land by the mortgagor.

5. Contingent estates and interests are assignable in equity.

6. Contingent interests may be the subject of a contract which, if made for a valuable consideration, will be specifically enforced, when the event happens.

7. Equity will treat a mortgage of property, real or personal, to be subsequently acquired, as a binding contract.

8. Roberts and Pyne's Appeal, 10 P. F. Smith 400, distinguished.

March 3d 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Chester county*: In Equity: No. 268, to January Term 1870.

On the 7th of September 1869, David Woelpper filed a bill against The Philadelphia, Wilmington and Baltimore Railroad Company, De Witt Clinton Lewis, sheriff of Chester county, The Philadelphia and Baltimore Central Railroad Company, and Ezra Bowen and George S. Fox, trustees in a mortgage executed by the last-named company.

The bill set out:—

1. The incorporation of the Philadelphia and Baltimore Central Railroad Company by Pennsylvania and its union by authority of Pennsylvania with a corporation of Maryland and that the two corporations became one, under the name of The Philadelphia and Baltimore Central Railroad Company.

2. By an Act of February 12th 1856, Sect. 1, For the purpose of constructing and equipping The Philadelphia and Baltimore Central Railroad, the said company was authorized to borrow $1,500,000, and to issue their bonds therefor, and to secure the payment of the said bonds and their interest, by executing and delivering to trustees a mortgage or mortgages of all or any part of their road, property, rights, liberties and franchises in the state of Pennsylvania. Sect. 2. The assent of this Commonwealth was given to any law enacted or to be enacted by the legislature of Maryland, authorizing the borrowing of money by the said Philadelphia and Baltimore Central Railroad Company to any amount not exceeding $1,500,000, for the construction and equipping

of the said company's road, and the issuing of bonds therefor, and the mortgaging of all or any part of the same, situate and being in the state of Maryland, to secure the payment of said bonds with their interest.

3. The Philadelphia and Baltimore Central Railroad Company, in pursuance of the authority of the above-mentioned act, executed a mortgage to Bowen and Fox, of "all the road, property, rights, liberties, privileges, corporate franchises, incomes, tolls and receipts, now held or hereafter to be acquired in Pennsylvania," in trust to secure the bonds issued in pursuance of the same act. The mortgage also provided a mode by which the whole mortgaged property might be sold together by the trustees, at the request of bondholders to the amount of $100,000, and purchased for all the bondholders, &c.

4. The plaintiff was the holder of bonds amounting to $7200, secured by the mortgage.

5 and 6. The Philadelphia, Wilmington and Baltimore Railroad Company, defendants, on the 16th of July 1869, recovered judgment for $122,942.11, against the Philadelphia and Baltimore Central Railroad, in a suit on bonds secured by said mortgage; an execution was issued on the judgment under which Lewis, defendant, as sheriff levied on four locomotive engines, a number of cars, shop and quarry tools, cross-ties, iron rails, furniture at stations, &c. The sheriff's inventory was made part of the bill as Schedule " B."

7. Averred that the mode provided for selling the whole mortgaged property was a contract between the holders of the bonds. The sale of part of the property by any of the bondholders under an execution was in violation of the contract, and contrary to equity.

The prayers were :—

3. That it may be declared that the property levied upon as aforesaid, is a part of the mortgaged premises, and is exempt from levy and sale under the execution on the judgment hereinbefore mentioned, or under any other execution that may hereafter be issued thereon.

4. That the defendants, the Philadelphia, Wilmington and Baltimore Railroad Company and Lewis, may be restrained from selling the property levied on under the execution issued on the judgment against the Philadelphia and Baltimore Central Railroad Company, and from further proceeding on the said execution against the said property or any other property, real or personal, corporate rights and franchises, granted and conveyed by the said mortgage, and that the said Lewis be ordered to withdraw his levy from the property now levied on.

5. Further relief.

The Philadelphia, Wilmington and Baltimore Railroad Com-

[Philadelphia, Wil. & Balt. Railroad Co. v. Woelpper.]

pany, by their answer denied that the property levied on was covered by the mortgage, and averred that it was acquired after the delivery of the mortgage.

Lewis, the sheriff, submitted himself to the court. There was no appearance for the other defendants.

A replication having been filed, the case was referred to P. Frazer Smith, as examiner and master. He took testimony, and as master reported:—

* * * "I find that the engines, 'Kennett' and 'Brandy-wine,' and two dirt-carts belonged to the company at the execution of the mortgage.

"I find that the 'material,' consisting of cross-ties and iron, are part of the real estate or road-bed, although obtained since the execution of the mortgage. Those articles, therefore, in any aspect, are covered by the mortgage.

"I find that the remaining articles contained in the inventory were obtained by the company since the execution of the mortgage, and that at the time of its execution the road was in a condition to be operated a distance not exceeding five miles, and that at the time of the levy it had been completed and equipped, and was in operation in Pennsylvania for a distance of at least thirty-seven miles.

"The pleading as well as the testimony, determines that all the property levied on was in actual use upon the railroad, and was required for the transaction of its business, and that the trains could not be run without it.

"It would seem conclusively to follow, then, that although many of the specific articles may have been acquired since the execution of the mortgage, they are of the kind of articles which the company had at that time, and are essential to the full exercise of the franchises, &c., granted to the company, which were for the benefit of the public as well as for that of the corporators.

"The money was borrowed for the purpose of *constructing and equipping* the road, and, in the absence of proof to the contrary, is presumed to have been so used. It cannot be, that when the bondholders loaned their money they supposed that there was no security for $800,000 but five miles of the road, to an unimportant point, and two locomotives, two dirt-carts and perhaps a passenger car. Both parties must have contracted with the intention that the security should be upon that which the money was expressly to be used to accomplish.

"It was, therefore, an *agreement* that it should be so held, which, if not enforceable at law, on the maxim *qui non habet, ille non dat*, yet is binding in equity as relating to things in possession of the mortgagor to which the other things can attach in future as part of the thing possessed, and are not in substitution of it: something *in præsenti* with which the thing *in futuro* is to

[Philadelphia, Wil. & Balt. Railroad Co. v. Woelpper.]

be connected as necessary for its use or as incident to it: Morrill v. Noyes, Supreme Court of Maine, 3 Amer. Law Reg. N. S. 18; Wilson v. Seibert, Louisville Chan., 8 Id. 608; Pierce v. Emery, 39 N. Hamp. 484. If it be conceded that the property levied on is personal chattels, yet the law contemplates that such property is always necessary to the company for the exercise of the perpetual franchises granted, and the performance of the obligations to the public, imposed for the same indefinite period; there is, therefore, given to the property a permanence which is one of the characteristics of real estate, having also the incident that such additions as may be made to it shall partake of the same character and become practically part of the same thing which was originally mortgaged: in the same manner as a house put on a mortgaged lot is covered by the mortgage. Aided by the counsel who represented The Philadelphia, Wilmington and Baltimore Railroad Company, I have not been able to find any authority which denies the right of any railroad company to mortgage all its property when empowered by the legislature to do so, or that which asserts such mortgage will not cover locomotives, cars and all other property necessary for the exercise of its franchises, whether the identical articles are in possession of the company at the execution of the mortgage, or afterwards added to what was then held.

"I am of opinion that all the articles levied on in this case were conveyed in trust by the mortgage, are protected by it, and cannot be sold under the execution of any judgment-creditor of the mortgagor." * * *

"With reference to the Philadelphia, Wilmington and Baltimore Railroad Company, the only defendant in interest, it is peculiarly proper that a principle which would restrain her should be brought into action. She has agreed with her co-obligees to take a common security, and *quoad* the property covered by the mortgage; it seems to me she is to be treated as a partner, not to be permitted to gain any advantage over her fellows, nor even to injure them, although that might work no advantage to herself. She has agreed too, as I think, that the corporate property and franchises shall be sold as an entire thing; because they would thus be sold as a whole and on credit, which a sheriff cannot give, and so would bring a larger price; and further still, because the specific covenant that all the bondholders may become purchasers, pay the purchase-money by their bonds, and continue to enjoy the privileges granted by the Commonwealth, may be fulfilled.

"When parties bear such common relations to each other, a court of equity will protect the interests of all: J. C. Slemmer's Appeal, 8 P. F. Smith 178; Williamson v. N. Albany and Salem Railway, U. S. C. C. Ohio, per McLean J. 9; American Railway

14 P. F. Smith—24

[Philadelphia, Wil. & Balt. Railroad Co. v. Woelpper.]

Times, No. 37; Bowen *v.* Brecon Railway Co., 4 Law R. 3 Eq. Cases 541." * * *

The master reported that the 3d and 4th prayers be granted.

The Philadelphia, Wilmington and Railway Company excepted to the report.

The court (Butler, P. J.) confirmed the report, and decreed "that the property levied upon as set forth in the schedule 'B,' attached to the complainant's bill and made part thereof, is a part of the mortgaged premises conveyed by the mortgage, &c., and is exempt from levy and sale under the execution on the judgment mentioned in said bill, or under any other execution that may hereafter be issued thereon; that the Philadelphia, Wilmington and Baltimore Railroad Company and D. W. C. Lewis, sheriff, are perpetually enjoined from selling the property levied upon under the execution issued on the judgment recovered as aforesaid, &c., and from further proceeding on the execution against the said property or any other property, real or personal, corporate rights and franchises granted and conveyed by the said mortgage, and that the said defendant, the said D. W. C. Lewis, sheriff, withdraw his levy from the property now levied on." * * *

The Philadelphia, Wilmington and Baltimore Railroad Company appealed to the Supreme Court, and assigned the decree of the Court of Common Pleas for error.

*J. J. Pinkerton* and *J. S. Futhey,* for appellants.—One cannot mortgage property to which he has no title: Jones *v.* Richardson, 10 Metc. 481; Moody *v.* Wright, 13 Id. 17; 2 Hilliard on Mortgages 196. A corporation can mortgage only under express authority: Howe *v.* Freeman, 14 Gray 566; Loudenslager *v.* Benson, 3 Grant 384. "Property" in this mortgage is too indefinite to cover engines, rolling-stock, &c.: Mogg *v.* Baker, 3 M. & W. 195; Winslow *v.* Merchants' Ins. Co., 4 Metc. 306. These articles are not covered by "franchises:" Shamokin Valley Railroad *v.* Livermore, 11 Wright 465.

*W. Mac Veagh,* for appellees, cited Peirce on Amer. Railroad Law 530, 531; Morris *v.* Noyes, 3 Amer. Law Reg. N. S. 18; Coe *v.* Hart, 6 Amer. Law Reg. 27; Phillips *v.* Winslow, 18 B. Monroe 521; 1 Redfield on Railways 235, note 21–24.

The opinion of the court was delivered, March 10th 1870, by
SHARSWOOD, J.—By the Act of Assembly of February 12th 1856 (Pamph L. 42) it was provided "that for the purpose of constructing and equipping the Philadelphia and Baltimore Central Railroad, chartered by the legislatures of Pennsylvania and Maryland, the said company is hereby authorized to borrow money to any amount not exceeding $1,500,000," * * * "and

to issue their bonds therefor," * * * "and to secure the payment of the said bonds and their interest by executing and delivering to such trustee or trustees as they may select, a mortgage or mortgages of all or any part of their road, property, rights, liberties and franchises of the said company in the state of Pennsylvania."

In pursuance of this power the said company, on February 15th 1859, did execute and deliver to Ezra Bowen and George S. Fox, trustees, a mortgage of "all the road, property, rights, liberties, privileges, corporate franchises, incomes, tolls and receipts, now held or hereafter to be acquired in the state of Pennsylvania."

The first question which arises is, whether this mortgage is effectual to give a valid lien on the locomotive engines, passenger and other cars, furniture of stations, tools and materials for support and repair of the road, levied on by the sheriff of Chester county under a fieri facias issued upon a judgment obtained by the appellants in the Court of Common Pleas. These articles, or by far the greater part of them, were not in existence or acquired by the mortgagors at the date of the mortgage; but it is clear, and is reported as a fact by the master in the court below, that they were in actual use upon the railroad, and were required for the transaction of its business, and that the trains could not be run without them, and that although acquired since the execution of the mortgage, they are of the kind of articles which the company had at that time, and are essential to the full exercise of the franchises granted to the company, which were for the benefit of the public as well as for that of the corporators. It is not denied that the words of grant in the mortgage are sufficiently ample to cover all this property. But it is objected that no person, natural or artificial, can grant what he does not possess or own at the time of the grant. *Qui non habet, ille non dat.* Yet even at law this rule is not without some qualifications. A man may grant the future accretions or increase of any subject which he owns at the time of the grant, as all the wool which shall grow on his sheep for a term of years. Grantham *v.* Hawley, Hobart 132, was the case of a covenant by a lessor that a lessee of a term certain might take the corn that should be growing at the end of the term, and upon an issue whether it did of right belong to the lessee it was held to be a good grant. And though the lessor had it not actually in him, nor certain, yet he had it potentially; for the land is the mother and root of all fruits. Therefore he that hath it may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant: Ass. 21 Henry 6. A parson may grant all the tithe wool that he shall have in such a year: 1 Plowd. 13 a. So, if a man grant *vesturam terræ,* the grantee shall have the corn, grass, underwood, sweepage and

[Philadelphia, Wil. & Balt. Railroad Co. *v.* Woelpper.]

the like: 1 Inst. 4 b.    It is indubitable that a mortgage of land will pass all structures or fixtures that may afterwards be erected upon it by the mortgagor.    But it is not necessary to maintain that the rolling-stock and equipments of a railroad are part of its accretions and fixtures, so as to make the transfer good at law.    It is unquestionably good in equity.    Contingent estates and interests, though not assignable at law, are assignable in equity; and they may also be the subject of a contract, which, when made for valuable consideration, will be specifically enforced when the event happens: 2 Story's Eq. 1040, 6.    On the same principle equity originally took cognisance of assignments of choses in action, which were void at law, and when made for value carried them into execution by considering the assignment a declaration of trust by the assignor in favor of the assignee, compelling the assignor to allow his name to be used by the assignee in proceeding at law, and enjoining him from releasing or otherwise interfering with the equitable property vested by the assignment in the assignee: 2 Story 1039, 1040.    It is a plain corollary from these principles that a court of equity will treat a mortgage of property to be subsequently acquired, whether it be real or personal, as a binding contract, which attaches to the thing when acquired.    Equity considers that as actually done which a chancellor would decree to be done.    If then, upon every acquisition of property within the description contained in the mortgage, a chancellor would decree the mortgagor to execute a mortgage of such subject, it will be considered as though it had been done, and that of every article of property as acquired there was an actual mortgage then executed.    The authorities cited in the able report of the master below fully sustain this view, to which may be added Covey *v.* Pittsburg, Fort Wayne and Chicago Railroad Co., 3 Phila. Rep. 173, decided by our brother Agnew, when President Judge of the Court of Common Pleas of the 17th Judicial District.

But the principal contention here has been that the mortgage by this corporation, so far as it included subsequent acquisitions, was *ultrà vires*—beyond the power conferred upon them by the legislative grant.    The act authorized them to mortgage all their property, a word of very large extent.    Property (*proprietas*) is whatever is a man's own (*proprius*).    His future acquisitions, though subject to a contingency, are his own, and if, as we have seen, they can be granted or assigned, they are his present property, valuable now to him because they can be enjoyed or used by anticipation.    There is no refinement in this reasoning as applied to the construction of this statute.    The legislature evidently intended it.    Every law is to be interpreted according to its subject-matter.    This act relates to a railroad and its usual necessary appertenances.    The words are, "road, property, rights,

liberties and franchises," including the road and all its adjuncts. The very objects of the loan, and of the mortgage to secure it, as expressed in the act, was "for the purpose of constructing and equipping the road." It evidently contemplated a condition of things in the future. The bare road, only then constructed in part, without any rolling-stock or equipments, would have been no security, or a very inadequate one. Had the road even been fully equipped at the date of the mortgage, can it be doubted that the legislature meant that it should comprise everything subsequently acquired to replace old and worn-out materials, and to maintain and keep up the equipment? No money would have been loaned on a security daily deteriorating, and which must eventually perish entirely. As was well said by our brother Agnew, in the case before referred to, " To build a railroad requires a vast capital beyond ordinary means, and to borrow it to carry into effect the objects of the incorporation demands all the security within the possible power of the corporation to give. By necessity and practice, the money of the creditor capitalist finishes and equips the road ; and slender indeed would his security be which extends not beyond worn-out rails and rolling-stock, and equipments first in use, and these indeed not often in being at the time of the execution of the mortgage. In giving the power to borrow and pledge, it must be supposed the power was given to its fullest extent, in order to carry into effect the object of the incorporation." This construction does not conflict with Roberts's and Pyne's Appeal, 10 P. F. Smith 400. That was under the Act of January 11th 1867 (Pamph. L. 1372), which enabled " all iron and other manufacturing and mining corporations to borrow moneys and to secure the loans to be made to them by mortgage of their property." No special purpose is specified, and the subject-matter was not such as to call for or require any other than a strict construction. It was held, therefore, not to include chattel mortgages. " It is true," says the opinion, " railroad corporations have been allowed to do this, and other corporations in similar circumstances, when personal interests have been of such a permanent or fixed character, or so incapable of removal that no inconvenience would be felt in relaxing the general rule as to movables. But in this act the term property is so wholly unexplained by its context, that it may or may not refer to chattels, and leaves the mind to hesitate and doubt whether the legislature meant more than the property accustomed to be mortgaged under the laws of the state, and for which provision was made for notice by recording, and remedy by scire facias."

These conclusions sustain the decree made in the court below, and dispense with the necessity of considering the other point

made as to the right of the sheriff to levy upon the articles contained in the inventory independently of the mortgage.

> Decree affirmed, and appeal dismissed at the costs of the appellants.