SUSQUEHANNA CHEMICAL CORPORATION v. PRODUCERS BANK & TRUST CO., BRADFORD, PA.

No. 9824.

United States Court of Appeals Third Circuit.

Argued April 5, 1949.

Decided April 27, 1949.

Frank B. Quinn, Erie, Pa. (James D. Wolfe, Bradford, Pa., on the brief), for appellant.

Henry A. MacDonald, Erie, Pa. (Gifford, Graham, MacDonald & Illig, Erie, Pa., on the brief), for appellee.

Before MARIS, GOODRICH, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case is a contest between the trustees in reorganization for the Susquehanna Chemical Corporation and the bank with which the corporation had, on July 30, 1948, checking accounts. The debtor owed the bank an amount greater than its checking accounts upon a demand note containing the usual Pennsylvania confession of judgment clause. Petition for reorganization under Chapter X, 11 U.S.C.A. § 501

et seq., was filed and trustees appointed on July 30, 1948. The bank thereafter refused to honor checks drawn on the checking accounts of the debtor corporation and claimed that under Pennsylvania law it was entitled to apply these accounts to the payment of its own debt. The trustees sought, in reorganization court, a judgment that the bank be directed to pay the amount of the deposits to the trustees. The District Court rendered such judgment and the bank appeals.

 The first question is a procedural one which the Court raises sua sponte. We have been concerned with the question whether the equivalent to a turnover order may be applied to a claim against a bank, because the relation between the bank and depositor is, as all lawyers know, a debtor-creditor matter and the bank has no specific property belonging to the depositor. However, it appears to be undisputed that this difficulty is one which may be waived by the parties and is waived by no one objecting to it. Resort need not be had to plenary proceedings in such a case if nobody objects to the matter being handled in the reorganization court.[1]

 The next question to be answered is whether the rights of the parties with regard to this matter of set-off are to be determined by state law or federal law. This will make a difference. The answer to the question is that federal law controls. The authority of the United States in this field grows from the bankruptcy power which, in turn, is directly given to the Federal Government by the Constitution. The reorganization court is one dealing with the process authorized and directed by Congress and based on a grant of constitutional power to that body. We are, therefore, dealing with federal law in all matters concerning the conduct of reorganization proceedings, although, of course, a reorganization court, like a bankruptcy court, takes the property situation as it finds it, and property rights will have been determined by state law prior to bankruptcy or reorganization proceedings.

The application of federal law to reorganization proceedings seems to be settled beyond doubt by the decisions of the Supreme Court and other federal courts.[2] It is likewise recognized by state decisions where questions involving the application of state law in bankruptcy matters have come up.[3]

Before we leave this matter of state or federal law there is one other point which

---

[1] In a bankruptcy proceeding, summary jurisdiction may be conferred by consent in all cases where a party is entitled to the determination of his rights in a plenary action. MacDonald v. Plymouth County Trust Co., 1932, 286 U. S. 263, 52 S.Ct. 505, 76 L.Ed. 1093; 2 Collier, Bankruptcy Par. 23.08, p. 503 et seq. (14th ed. 1940). Although Section 23 of the Bankruptcy Act, 11 U.S. C.A. § 46, is rendered inapplicable in a reorganization proceeding, 11 U.S.C.A. § 502, summary jurisdiction may still be conferred by consent in a reorganization proceeding, if the party was entitled to a plenary suit. See 6 Collier, Bankruptcy Par. 3.06, p. 595 et seq.; Par. 3.18, p. 659 et seq., 14th Ed., 1940.

[2] The interpretation and application of Chapter X are matters of federal law, just as the criteria for distribution to creditors in bankruptcy are controlled by federal law. See Prudence Realization Corp. v. Geist, 1942, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293; Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 162, 67 S.Ct. 237, 91 L.Ed. 162; Petition of Portland

Electric Power Co., 9 Cir., 1947, 162 F. 2d 618, 621. A right which would have been granted under state law may be disregarded in order to effect an equitable distribution of assets within the policy of the Bankruptcy Act. Vanston Bondholders Protective Committee v. Green, supra. The argument is a fortiori in a reorganization proceeding where the jurisdiction of the court is broader than in bankruptcy and the continuance of the business rather than liquidation is in prospect. Specifically on the subject of set-off, see Finletter, The Law of Bankruptcy Reorganization, 303 et seq. (1939); 2 Gerdes, Corporate Reorganizations, § 759 (1936); 6 Collier, Bankruptcy Par. 9.09 (14th Ed. 1940); 11 Remington, Bankruptcy § 4528 (1947).

[3] State courts have recognized in bankruptcy cases the controlling effect of the federal rule as to set-off even when it was in conflict with the state rule. See Putnam v. United States Trust Co., 1916, 223 Mass. 199, 111 N.E. 969; Shields v. John Shields Construction Co., 1914, 83 N.J.Eq. 21, 89 A. 1022; Frank v. Mercantile National Bank, 1905, 182 N.Y.

786

should be disposed of. The appellant argues that under the Pennsylvania statute[4] a bank depositor who owes his bank money has only a claim against the bank for the difference between his "deposit" and the bank's claim against him. Language from some Pennsylvania decisions is cited to indicate that where a depositor does owe the bank, the latter's honoring of the depositor's checks is a matter of courtesy or accommodation if the bank's claim is bigger than the customer's account. The rule of property with regard to the situation presents a point of considerable difficulty. The reorganization court can handle the disposition of the debtor's assets and liabilities, but it cannot make an asset out of an alleged bank account if, in fact, there is no bank account. We think, however, the appellant's own argument shows the weakness in the position it suggests. The customer's lack of claim against the bank is conditioned by the circumstance that "the right of defalcation is claimed." But when one talks about claiming such a right, we get the equivalent of set-off or counter-claim called by another name. And then we get to the place of considering set-off, counter-claim, etc. and we are, as already indicated, away from the state

law and governed by the federal law upon the subject.[5] We pass, then, from the consideration of state statute to federal statute upon the subject-matter involved.

The third point is the applicability of the set-off section of the Bankruptcy Act. Section 68, 11 U.S.C.A. § 108, states the right of set-off in rather broad terms. It says "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid. * * *" Added to that sweeping rule we have the provision in Chapter X that the law applicable in bankruptcy proceedings is to be applied in reorganization "where not inconsistent with the provisions of this chapter * * *." 11 U.S.C.A. § 600.

■ In considering whether the application of a set-off provision is inconsistent with the purpose of the reorganization chapter it must be kept in mind that there is a sharp difference between straight bankruptcy proceedings and those for reorganization. In bankruptcy the object is to liquidate the assets of the bankrupt, to pay off his creditors as quickly and inexpen-

---

264, 74 N.E. 841, 108 Am.St.Rep. 805; Whaley v. King, 1918, 141 Tenn. 1, 206 S.W. 31.

[4] The Pennsylvania Defalcation Act of 1705, 12 P.S. § 601, provides:

"If two or more dealing together be indebted to each other upon bonds, bills, bargains, promises, accounts, or the like, and one of them commence an action in any court of this province, if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued, it shall be lawful for such defendant to plead payment of all or part of the debt or sum demanded, and give any bond, bill, receipt, account or bargain in evidence; and if it shall appear that the defendant hath fully paid or satisfied the debt or sum demanded, the jury shall find for the defendant, and judgment shall be entered, that the plaintiff shall take nothing by his writ, and shall pay the costs. * * *"

[5] Appellant cites two Pennsylvania cases to support its position: Aarons v. Public Service Building & Loan Ass'n, 1935, 318 Pa. 113, 178 A. 141, and Duffy v. Fifty-Eighth & Chester Ave. Building & Loan Ass'n, 1937, 325 Pa. 127, 189

A. 307. Both were garnishment proceedings to attach bank deposits when the banks were also creditors of the depositor associations. The banks asserted rights of set-off which were upheld on appeal. Although the Defalcation Act is said to extinguish cross-claims by operation of law, the conclusion that the right is one of set-off which may or may not be asserted by the party entitled to it is amply illustrated by the opinion in the Aarons case. In referring to the right of defalcation, the Pennsylvania Supreme Court said: "That right is not taken away by the attachment execution authorized by the Act of 1836. * * * It may be claimed, or not, at the option of the garnishee * * * and need not be asserted until some one shall, in the words of the statute, 'commence an action'; at which time, the act provides, 'it shall be lawful for such defendant to plead.' If cross-demands are pleaded and proved, they extinguish each other. The right to set-off may be asserted by a garnishee; according to the statute, it need not be asserted until a suit is brought." 318 Pa. at page 118, 178 A. at page 143.

sively as possible and to free the bankrupt from the burden of accumulated debt so that he may begin his business life anew. But the purpose of reorganization is not liquidation at all. If reorganization is successful the debtor corporation will continue to function, to pay its creditors, and carry on its business. The purpose of reorganization is to save a sick business, not to bury it and divide up its belongings.

It is quite evident that the application of the unqualified right of set-off might be enough, without more, to defeat the purpose of reorganization. As Finletter says on the subject: "It is not appropriate to use the same rule of set-off as is applied in a liquidation. To do so may deprive the debtor, for no equitable reason, of all or a large part of its current assets at a time when it needs them most and may frustrate the purpose of the Act."[6]

■ Recognition of the important differences between straight bankruptcy and reorganization has led both the courts and textbooks writers to say that the compulsory application of Section 68 to all reorganization cases would not be consistent with provisions of the chapter.[7] In other words, sometimes the set-off rule of Section 68 is to be applicable; at other times

it is not. Whether it is or not depends upon the equities of the situation. To support this conclusion we have not only the textbook writers, but also the Supreme Court in Lowden v. Northwestern National Bank, 1936, 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114. We think that this decision plus the other authorities cited in the footnote show beyond doubt that the reorganization court is not bound to apply, willy-nilly, the set-off rule of Section 68 of the Bankruptcy Act. The criteria to be applied are given by the Supreme Court in the Lowden case. They include the value of the assets, the temporary or permanent duration of the debtor's inability to pay its debts as they mature, the superior liens, if any, to that of the creditor seeking set-off, and any understanding between the parties that the deposits were to be used to cancel the debtor's obligation.

■ This brings us, then, to the final problem in the case. Did the District Judge, sitting in the capacity of what would have been called, in former days, a Chancellor, exercise his discretion reasonably when he, in effect, denied the bank its set-off? On this point the situation of the debtor corporation at the time of the reorganization is pertinent for considera-

---

[6] Finletter, The Law of Bankruptcy Reorganization 306 (1939).

[7] Lowden v. Northwestern National Bank, 1936, 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114; same case on remand, 8 Cir., 1936, 84 F.2d 847, certiorari denied 1936, 299 U.S. 583, 57 S.Ct. 109, 81 L.Ed. 430; In re American Coils Co., D.C.N.J.1947, 74 F.Supp. 723. The cases relied upon by appellant do not dispute the proposition stated. In Tyler v. Marine Midland Trust Co., 2 Cir., 1942, 128 F.2d 927, 928, the debtor was insolvent. The Court, in referring to the Lowden case, said: "Of course, the trustee can point to Lowden v. Northwestern Nat. Bank & Trust Co. * * * as showing that a reorganization proceeding differs from an ordinary bankruptcy liquidation. But that case hardly goes so far as completely to deny application of the usual rule. It stated only that in some circumstances the rule in reorganization would have to be different. Indeed, that case itself showed an instance where the ordinary rule might be inequitable, for there a bank sought to set off an ordinary deposit against

some unmatured bonds that it had bought on the open market. See the subsequent decision, 8 Cir., 84 F.2d 847." In re Potts, 6 Cir., 1944, 142 F.2d 883, certiorari denied, 1945, 324 U.S. 868, 65 S. Ct. 910, 89 L.Ed. 1423, and In re Associated Telephone Utilities Co., D.C.S. D.N.Y.1935, 12 F.Supp. 468, involved set-offs claimed by the debtor. The question of impeding a reorganization by set-off in favor of a creditor was not, therefore, in issue in those cases. In re Rosenbaum Grain Corp., 7 Cir., 1939, 103 F.2d 656, raised the sole issue of the mutuality of the commission accounts of a grain broker and a stock broker inter se. In re Bush Terminal Co., 2 Cir., 1938, 93 F.2d 661, concerned the set-off of protested tax payments to the City of New York and is without application to the present case. The set-off was, however, disallowed for lack of mutuality. For text authority, see Finletter, The Law of Bankruptcy Reorganization 303 et seq. (1939); 11 Remington, Bankruptcy § 4528 (1947). Cf. 6 Collier, Bankruptcy Par. 9.09 (14th ed. 1940).

tion. Here was a small but active company. The value of its real estate and equipment was over $1,000,000. The value of personal property, other than equipment, was valued at over $50,000. The only lien of record against it was a judgment note of which there was a balance of $2250 due on July 30, 1948. No execution had been threatened or issued against it. The bank had not entered judgment on its note. There was no understanding between the parties concerning set-off. The unpaid balance on the note was about $27,000 and the deposit accounts with the bank were about $20,000. Quite evidently this company was a going concern and its only difficulty was a shortage of liquid working capital. It was, in common parlance, land poor. What its creditor bank did, at the beginning of reorganization, was the thing most calculated to throw a monkey wrench into the whole machinery of reorganization. The bank seized its cash. Fortunately, the trustees were able to raise some money elsewhere so that the reorganization did not collapse. They promptly got authority from the reorganization court to borrow up to $200,000 on trustees' certificates and almost immediately raised $75,000 by that means.

We think the District Court was right in concluding that the application of the equities in this case was against the set-off asserted by the bank.

The judgment of the District Court will be affirmed.