299 F.2d 683
 George W. BALL, Philip M. Stern, Arnold Sagalyn and Clayton Fritchey, t/a Northern Virginia Sun Publishing Company, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
George W. BALL, Philip M. Stern, Arnold Sagalyn and Clayton Fritchey, t/a Northern Virginia Sun Publishing Company, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Roger W. Wheeler, Jr., et al., Intervenors.
 No. 8512.
 No. 8525.
 United States Court of Appeals Fourth Circuit.
 Argued January 10, 1962.
 Decided January 30, 1962.
 Certiorari Denied April 2, 1962.
 
 See 82 S.Ct. 868.
 Philip W. Amram, Washington, D. C. (Gilbert Hahn, Jr., Mark B. Sandground, Ronald Rosenberg, Bruce G. Sundlun and Amram, Hahn & Sundlun, Washington, D. C., on brief), in support of petition.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., and Seymour J. Spelman, Alexandria, Va., in opposition to petition.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 SOBELOFF, Chief Judge.
 
 
 1
 We are asked to direct a writ of mandamus to the National Labor Relations Board requiring it to file in our court, rather than in the Court of Appeals for the District of Columbia Circuit, the record of a case which the Board has recently decided. This, we conclude, we are not empowered to do in the existing circumstances, and the petition for mandamus must be denied.
 
 
 2
 Twenty-eight former employees of the Northern Virginia Sun Publishing Company, a partnership which publishes a newspaper in Arlington, Virginia, filed a complaint with the National Labor Relations Board, charging the company with unfair labor practices, committed in Virginia. Sometime after the hearing of the case, the parties were notified that an opinion would be handed down at ten o'clock on the morning of December 7, 1961. This is the procedure which the publicity department of the National Labor Relations Board occasionally follows in cases of unusual interest in order to afford newspapermen who may be interested an equal opportunity to report the story; in all other cases the parties are notified of the decision by mail.
 
 
 3
 At 10:50 a. m. on the morning of December 7, fifty minutes after the Board made its decision public, the attorney for the employees filed a petition for review in the Court of Appeals for the District of Columbia Circuit. The company's attorney, not to be outdone in diligence by his adversary, had at 10:15 telephoned the clerk of the Court of Appeals for the Fourth Circuit in Richmond, Virginia, to inquire how late his office would remain open, and by the afternoon of the same day a petition for review was filed with the clerk.
 
 
 4
 On December 26, 1961, the employer instituted this petition for mandamus to command the Labor Board to file the record of the case here, rather than in the District of Columbia Circuit. The Board answered the employees' petition for review in the District of Columbia, and informally stated its intention to file the record of the case in that court on January 16, 1962, unless otherwise ordered. Counsel for the Board has orally agreed, however, to refrain from filing the record pending our disposition of the petition for mandamus.
 
 
 5
 The company urges us to read the statutes governing review of National Labor Relations Board decisions so as to give reviewing jurisdiction to the circuit wherein the unfair labor practices occurred, and not to the District of Columbia Circuit, when petitions for review are filed on the same day in both courts. The employees and the Labor Board, on the other hand, opposing mandamus, maintain that the statutes confer jurisdiction upon the court in which a petition for review is first filed, even when both petitions are filed on the same day. This view of the law the company characterizes derogatorily as the "hour and minute" rule, and urges its rejection.
 
 
 6
 The statutory provision for review of Board orders is found in section 10(f) of the National Labor Relations Act:[1]
 
 
 7
 "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside."
 
 
 8
 In contrast, jurisdiction of petitions by the Labor Board seeking enforcement of its orders is more restricted, in that the District of Columbia Circuit is not named as an alternative forum for review. Section 10(e) of the National Labor Relations Act[2] provides as follows:
 
 
 9
 "The Board shall have power to petition any court of appeals of the United States * * * wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order * * *. Upon the filing of the record with it the jurisdiction of the court shall be exclusive * * *."
 
 
 10
 This last provision, whereby the filing of the record vests that court with exclusive jurisdiction over the controversy, is applicable as well to review proceedings initiated under section 10(f).[3]
 
 
 11
 Prior to 1958, when petitions for review were filed by different parties in more than one circuit, the Board, in choosing the court in which to file the record, determined the tribunal which would hear the case. Since 1958, however, conflicts in jurisdiction are resolved in accordance with the terms of 28 U.S.C.A. § 2112(a) (1959), which is not limited to review of Labor Board decisions, but is applicable to the review of actions of most federal agencies. The statute in pertinent part provides as follows:
 
 
 12
 "If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals." (Emphasis supplied.)
 
 
 13
 Resolution of the problem before us depends upon the meaning of the words "first instituted" in 28 U.S.C.A. § 2112 (a) (1959). The view of the employees and of the Board is that, properly interpreted, the phrase "first instituted" means literally first filed, no matter how close in time the filings may be. The company, on the other hand, urges us to interpret the key words "first instituted" in light of the principle that "the law does not in general allow of a fraction of a day."[4] Applying this rule, filings occurring at different times on the same day are to be treated as happening simultaneously. The company advances the suggestion that by adopting this reading of section 2112(a) and rejecting the "hour and minute" rule, two consequences, which are not warranted by the statutes, would be avoided.
 
 
 14
 First, the company points out that the practical effect of adopting the "hour and minute" rule would be to place the District of Columbia Circuit in a preferred position as the reviewing tribunal. When the Board issues its orders in Washington at a pre-arranged hour, a party seeking review in the District of Columbia can reach the clerk's office of that court with his petition faster than one seeking review in the Fourth Circuit with its offices in Richmond, Virginia, or in the Ninth Circuit located in San Francisco, California. When the Board mails its decision to the parties, the same advantage goes to a party residing in or near the District of Columbia who desires review there if the other party is more distantly located. This advantage is heightened by a recent amendment of Rule 38(a) of the District of Columbia Circuit, 28 U.S.C.A. whereby a petition need contain, as the grounds for review, only "a concise statement, in barest outline, of the nature of the proceedings as to which review is sought * * *." (Italics ours.) Under this provision, counsel can speedily prepare his petition. The comparable Rule 27(1) of the Fourth Circuit, 28 U.S.C.A., for example, does not contain the phrase "in barest outline" and consequently, it is suggested, a petition, to be acceptable, must be more detailed and cannot be prepared quite so expeditiously.[5] The employer argues that this preferred position for the District of Columbia is nowhere indicated in the statutes, and suggests that rejection of the "hour and minute" rule would remedy the jurisdictional imbalance.
 
 
 15
 The second unwarranted consequence attributed by the present petitioner to the "hour and minute" rule is that it subverts the preference said to be given in sections 10(e) and (f), read together, to the circuit wherein the unfair labor practice was committed. Admittedly, the Board is not entitled, under section 10(e), to seek enforcement of its orders in the District of Columbia unless that is the place where the unfair labor practice occurred or unless the transgressing party resides or does business there. It is contended that the purposes of this restriction were to "localize Labor Board matters in the local Circuit Court" and to "prevent forcing employers to come from all over the United States into the District of Columbia." The company then imputes the same purposes to section 10(f) which permits an aggrieved party to seek review either in the local circuit or in the District of Columbia. Although a preference for the local circuit is not indicated in express language, the company asserts that localization is just as desirable for petitions of aggrieved parties seeking review of Board orders as it is for the Board's petitions for enforcement. And, secondly, the argument continues, there is no reason why parties petitioning for review should have the option to force their opponents to come to the District of Columbia, when this may not be done at the instigation of the Board.
 
 
 16
 The light which the legislative history sheds on section 2112(a) makes it plain that we should accept the reading of the statute which is urged on us by the employees and by the Labor Board. One of the principal concerns of Congress was the problem of inter-circuit conflicts of jurisdiction. The section originated in the Committee of Revision of the Laws of the Judicial Conference of the United States, headed by Judge Maris of the Third Circuit. As initially proposed, when petitions for review of the same agency action were filed in more than one circuit, the agency would deposit the record of the case in that court "in which in its [the agency's] judgment the proceedings may be carried on with the greatest convenience to all the parties involved."[6] It was thought that such a provision would impose an adequate standard for the agency's choice of a reviewing tribunal, and would in effect give statutory sanction to the existing practice which had been judicially developed.[7] However, the American Bar Association and several of the federal agencies objected to the provisions whereby it fell to the agency to decide which forum was the most convenient.[8] It was thought that this decision should be made by a court. Accordingly, the bill was amended to its present form so that, as the House Report points out, the court of appeals "in which the first proceeding was instituted, should have exclusive jurisdiction of all proceedings involving the same order with authority to transfer all the proceedings to another court of appeals if that would best serve the convenience of the parties."[9]
 
 
 17
 Section 2112(a) in its present form represents a change in the law in two significant respects: first, a judgment as to what forum will be most convenient to the parties is to be made by a court and not by the agency whose order is under review; and second, the court which is to make that decision is determined by a fixed rule of thumb — it shall be that court in which the petition for review was first filed. The value of this definite and easily administered rule would be greatly diminished if the "hour and minute" test were rejected and petitions filed on the same day were considered simultaneous. Were we to adopt the company's reading of the section, the congressional purpose of determining with time-clock precision who shall decide which forum is the most convenient to the parties would be frustrated when two or more petitions are filed on the same day. In such a case, each court could decide that it was the most suitable, precipitating an unseemly contest.
 
 
 18
 But the present petitioner for mandamus proposes an alternative principle which, it says, will furnish a more satisfactory method of determining where the authority lies to decide which forum is the most convenient, when two or more petitions are filed on the same day. The crux of its argument is the assertion that sections 10(e) and (f), read together, "clearly show a Congressional preference for the Circuit in which the unfair labor practice took place and a Congressional subordination of the District of Columbia." However, despite the earnestness and skill with which the argument is presented, we cannot accept it.
 
 
 19
 Quite correctly, the company points out that section 10(e), as proposed in 1935, would have permitted the Labor Board to seek enforcement of its orders either in the District of Columbia or in the circuit wherein the unfair labor practice was committed or where the employer resided or did business.[10] It further shows that the District of Columbia Circuit was eliminated as an alternative forum for review.[11] The company assigns two reasons for this change. One was to prevent employers, who alone prior to the Taft-Hartley Act of 1947 could commit unfair labor practices,[12] from being drawn from distant places to Washington at the instigation of the Labor Board. This reason finds ample support in the legislative history[13] and its merit is obvious.
 
 
 20
 Secondly, the company discovers a purpose to give the court of appeals, where the unfair labor practice was committed or where the employer resides, jurisdiction to hear the case — in effect, to "localize" the appeal. This supposed second reason lacks substance and brings no additional support to the first. It is true that localization is a necessary corollary to the elimination of the District of Columbia Circuit as an alternative forum in enforcement proceedings under section 10(e). But we find in the legislative history no other reason to prefer the local circuit. There is nowhere a suggestion that the local circuit is more competent to decide the case because of a familiarity with local conditions, or for any other reason.
 
 
 21
 Our examination of the two sections does not lead us to the proposed conclusion that the purposes underlying the two sections are the same and that the restrictions in section 10(e) upon the jurisdiction of the District of Columbia Circuit in enforcement proceedings, are to be transferred to section 10(f) by interpretation. The policy of not permitting the Board to force employers to come to Washington is not involved in section 10(f). For one thing, this section is constructed differently from section 10(e), for it expressly permits an aggrieved party to seek review in the District of Columbia Circuit even if the unfair labor practice occurred elsewhere. Furthermore, the aggrieved party seeking review could be either an employer, an employee, or a union. By not eliminating, but expressly acknowledging, the District of Columbia as an alternative forum, the apparent aim of Congress is to ease the situation of a losing party desiring review. It affords him a choice denied the Board when it proceeds under section 10(e). It may well be that a practical effect of adopting the "hour and minute" rule will be to increase the number of reviews of Board orders in the District of Columbia Circuit. There is nothing in section 10(f) or in its legislative history to indicate that Congress considered this undesirable. If, in a particular case, it is shown that a hearing in that court would impose an undue burden on one of the parties, the case will be transferred to a more suitable forum.[14]
 
 
 22
 We are not persuaded by the argument that, if the Board cannot force the company to come to Washington, neither should aggrieved parties enjoy the power to choose, at least in the first instance and subject to judicial supervision, the forum in which to litigate with their adversaries. The burden on the Board, an agency of the federal government, of being called upon under section 10(e) to seek enforcement of its orders in various sections of the country, is supportable when the alternative is to impose upon employers and unions the possibility of a burdensome journey to Washington. The case is different, however, under section 10(f). It is the aggrieved party and not the Board which seeks review and chooses the forum; thus, the only party being inconvenienced is the Board. And, when two parties, each aggrieved, seek review as in the present case, the relative inconveniences would vary from case to case, and understandably Congress saw fit to leave this judgment originally to the Board, and since the passage of section 2112(a) to the courts.
 
 
 23
 It has been pointed out that a party gaining substantially, but not entirely, the relief it sought, might ask review, not for the purpose of obtaining a modification of the Board's order, but to obtain enforcement in the forum of his choice. It is suggested that in such a case the substantial winner should in fairness be considered subject to the same limitations as to the selection of a forum as the Board whose decision he is in effect endeavoring to enforce. However, the practical difficulties of ascertaining the petitioner's motive forbid the attempt. Establishing motive could not in the usual case be done satisfactorily by means of simple affidavits. It would be unwise to interpret the statutes so as to burden the courts and the parties with additional litigation involving such preliminary controversies. Perhaps, such a consideration may be addressed to the court in which the case is first instituted to help it determine on motion whether convenience and justice require transfer of the case.
 
 
 24
 Even if we were persuaded of the superior merit of the procedure the present petitioner favors, we would not be justified in interpreting the words "first instituted" in the manner proposed. But it is noteworthy that the rule advocated by the company, not only fails to resolve the inter-circuit jurisdictional conflicts as neatly as the "hour and minute" rule, but would in some cases multiply the difficulties. For example, when one party petitions for review in the circuit where the unfair labor practice occurred and the other party on the same day does likewise in the circuit where he does business, whether or not the District of Columbia is one of these places, the company's proposal offers no criterion whatever for making a choice. We adhere to the congressional mandate to accord priority to that court in which the petition is actually first filed, leaving it to that court to consider and decide any claims based upon the "convenience of the parties in the interest of justice."
 
 
 25
 Petition for mandamus denied and proceedings in case No. 8512 transferred to the United States Court of Appeals for the District of Columbia Circuit upon the filing of the record in that court by the National Labor Relations Board.
 
 
 
 Notes:
 
 
 [1]
 49 Stat. 455 (1935), as amended, 72 Stat. 946 (1958), 29 U.S.C.A. § 160(f) (Supp. 1961)
 
 
 [2]
 49 Stat. 454 (1935), as amended, 72 Stat. 945 (1958), 29 U.S.C.A. § 160(e) (Supp. 1961)
 
 
 [3]
 Section 10(f) provides that, after the petition for review has been filed, "the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction * * *" to render decision on the merits of the dispute
 
 
 [4]
 See In re Susquehanna Chem. Corp., 81 F.Supp. 1, 9 (W.D.Pa.1949), aff'd, Susquehanna Chemical Corp. v. Producers Bank & Trust Co., 174 F.2d 783 (3d Cir. 1949). But this is not a universal rule, to be rigidly adhered tosemper et ubique. In the words of Lord Mansfield, "But though the law does not, in general, allow of the fraction of a day, yet it admits it in cases where it is necessary to distinguish. And I do not see why the very hour may not be so too, where it is necessary and can be done: For, it is not like a mathematical point, which cannot be divided." Combe v. Pitt, 3 Burrow 1423, 1434, 97 Eng.Rep. 907, 913 (K.B. 1763); see Township of Louisville v. Savings Bank, 104 U.S. 469, 26 L.Ed. 775 (1881).
 
 
 [5]
 Of the remaining courts of appeals, only the Third Circuit in Rule 18(1), 28 U.S. C.A. and the Ninth Circuit in Rule 34 (1), 28 U.S.C.A. have adopted language similar to that found in the District of Columbia Rule 38(a)
 
 
 [6]
 H.R. 6682, 84th Cong., 1st Sess. § 2 (1955)
 
 
 [7]
 See Hearing on H.R. 6682 Before a Subcommittee of the House Committee on the Judiciary, 84th Cong., 2d Sess. 11-15 (1956) (testimony of Judge Maris). For a series of cases illustrating this procedure, see Columbia Oil & Gasoline Corp. v. Securities Exchange Commission, 134 F.2d 265 (3d Cir. 1943); L. J. Marquis & Co. v. Securities Exchange Commission, 134 F.2d 335 (2d Cir. 1943); L. J. Marquis & Co. v. Securities Exchange Commission, 134 F.2d 822 (3d Cir. 1943)
 
 
 [8]
 See Hearing on H.R. 6788 Before a Subcommittee of the House Committee on the Judiciary, 85th Cong., 1st Sess. 24-25 (Interstate Commerce Commission), 33-34 (Department of Health, Education, and Welfare), 37-39 (American Bar Association, Section of Administrative Law) (1957)
 
 
 [9]
 H.R.Rep. No. 842, 85th Cong., 1st Sess. 5 (1957); see S.Rep. No. 2129, 85th Cong., 2d Sess. 4 (1958), reprinted in 2 U.S.Code Cong. & Ad.Law News 3996, 3999 (1958)
 
 
 [10]
 See S.1958, 74th Cong., 1st Sess. § 10 (f) (1935), reprinted in 1 Legislative History of the National Labor Relations Act 1302 (1935) [hereinafter cited as Legislative History]; H.R. 6288, 74th Cong., 1st Sess. § 10(f) (1935), reprinted in 2 Legislative History 2465-66 (1935). The present section 10(e) had originally been numbered section 10(f)
 
 
 [11]
 See 79 Cong.Rec. 7651 (1935), reprinted in 2 Legislative History 2352 (1935)
 
 
 [12]
 Congress in 1947 added section 8(b) to the National Labor Relations Act of 1935, forbidding certain conduct by unions by designating it as unfair labor practices. Labor Management Relations Act, § 101, 61 Stat. 141-142 (1947), 29 U.S.C.A. § 158(b) (1956)
 
 
 [13]
 See Hearings on S.1958 Before the Senate Committee on Education and Labor, 74th Cong., 1st Sess. 504 (1935), reprinted in 2 Legislative History 1890 (1935)
 
 
 [14]
 See Local 2674, Carpenters Union v. N. L. R. B., 47 Lab.Rel.Rep. 2688 (D.C.Cir. 1960). Motions to transfer were denied by the District of Columbia Circuit in Brewery Workers v. N. L. R. B., 47 Lab.Rel.Rep. 2688 (D.C.Cir.1960), and Local 833, U. A. W. v. N. L. R. B., 47 Lab.Rel.Rep. 2609 (D.C.Cir.1961). After the decision in the latter case, the Seventh Circuit, where the employer had filed a petition for review but only after a petition had been earlier filed by the union in the District of Columbia Circuit, transferred the proceedings to that court. Kohler Co. v. N. L. R. B., 47 Lab.Rel.Rep. 2662 (7th Cir. 1961)